JS 44   (Rev. 02/19)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet.   *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS

Captain Samuel Salloum

### DEFENDANTS

Charles H. Kable, IV; Rick Kopel; G. Clayton Grigg; Russell Travers; Chad F. Wolf; David P. Pekoske; Christopher A. Wray; Mark A. Morgan; and John and Jane Does.

**(b)** County of Residence of First Listed Plaintiff    Previously Wayne
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant    Fairfax, VA
*(IN U.S. PLAINTIFF CASES ONLY)*
NOTE:    IN LAND CONDEMNATION CASES, USE THE LOCATION OF
THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

☐ 1  U.S. Government
Plaintiff

☑ 3  Federal Question
*(U.S. Government Not a Party)*

☐ 2  U.S. Government
Defendant

☐ 4  Diversity
*(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff*
*(For Diversity Cases Only)* and One Box for Defendant)

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 365 Personal Injury - | ☐ 690 Other | ☐ 423 Withdrawal | ☐ 376 Qui Tam (31 USC |
| ☐ 130 Miller Act | ☐ 315 Airplane Product | Product Liability | | 28 USC 157 | 3729(a)) |
| ☐ 140 Negotiable Instrument | Liability | ☐ 367 Health Care/ | | | ☐ 400 State Reapportionment |
| ☐ 150 Recovery of Overpayment | ☐ 320 Assault, Libel & | Pharmaceutical | | **PROPERTY RIGHTS** | ☐ 410 Antitrust |
| & Enforcement of Judgment | Slander | Personal Injury | | ☐ 820 Copyrights | ☐ 430 Banks and Banking |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers' | Product Liability | | ☐ 830 Patent | ☐ 450 Commerce |
| ☐ 152 Recovery of Defaulted | Liability | ☐ 368 Asbestos Personal | | ☐ 835 Patent - Abbreviated | ☐ 460 Deportation |
| Student Loans | ☐ 340 Marine | Injury Product | | New Drug Application | ☐ 470 Racketeer Influenced and |
| (Excludes Veterans) | ☐ 345 Marine Product | Liability | | ☐ 840 Trademark | Corrupt Organizations |
| ☐ 153 Recovery of Overpayment | Liability | **PERSONAL PROPERTY** | **LABOR** | **SOCIAL SECURITY** | ☐ 480 Consumer Credit |
| of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 370 Other Fraud | ☐ 710 Fair Labor Standards | ☐ 861 HIA (1395ff) | ☐ 485 Telephone Consumer |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle | ☐ 371 Truth in Lending | Act | ☐ 862 Black Lung (923) | Protection Act |
| ☐ 190 Other Contract | Product Liability | ☐ 380 Other Personal | ☐ 720 Labor/Management | ☐ 863 DIWC/DIWW (405(g)) | ☐ 490 Cable/Sat TV |
| ☐ 195 Contract Product Liability | ☐ 360 Other Personal | Property Damage | Relations | ☐ 864 SSID Title XVI | ☐ 850 Securities/Commodities/ |
| ☐ 196 Franchise | Injury | ☐ 385 Property Damage | ☐ 740 Railway Labor Act | ☐ 865 RSI (405(g)) | Exchange |
| | ☐ 362 Personal Injury - | Product Liability | ☐ 751 Family and Medical | | ☐ 890 Other Statutory Actions |
| | Medical Malpractice | | Leave Act | | ☐ 891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 790 Other Labor Litigation | **FEDERAL TAX SUITS** | ☐ 893 Environmental Matters |
| ☐ 210 Land Condemnation | ☑ 440 Other Civil Rights | **Habeas Corpus:** | ☐ 791 Employee Retirement | ☐ 870 Taxes (U.S. Plaintiff | ☐ 895 Freedom of Information |
| ☐ 220 Foreclosure | ☐ 441 Voting | ☐ 463 Alien Detainee | Income Security Act | or Defendant) | Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment | ☐ 510 Motions to Vacate | | ☐ 871 IRS—Third Party | ☐ 896 Arbitration |
| ☐ 240 Torts to Land | ☐ 443 Housing/ | Sentence | | 26 USC 7609 | ☐ 899 Administrative Procedure |
| ☐ 245 Tort Product Liability | Accommodations | ☐ 530 General | | | Act/Review or Appeal of |
| ☐ 290 All Other Real Property | ☐ 445 Amer. w/Disabilities - | ☐ 535 Death Penalty | **IMMIGRATION** | | Agency Decision |
| | Employment | **Other:** | ☐ 462 Naturalization Application | | ☐ 950 Constitutionality of |
| | ☐ 446 Amer. w/Disabilities - | ☐ 540 Mandamus & Other | ☐ 465 Other Immigration | | State Statutes |
| | Other | ☐ 550 Civil Rights | Actions | | |
| | ☐ 448 Education | ☐ 555 Prison Condition | | | |
| | | ☐ 560 Civil Detainee - | | | |
| | | Conditions of | | | |
| | | Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

☑ 1 Original
Proceeding

☐ 2 Removed from
State Court

☐ 3 Remanded from
Appellate Court

☐ 4 Reinstated or
Reopened

☐ 5 Transferred from
Another District
*(specify)*

☐ 6 Multidistrict
Litigation -
Transfer

☐ 8 Multidistrict
Litigation -
Direct File

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics, 403 U.S. 388 (1971), et seq.

Brief description of cause:
Plaintiff is placed on a terrorist watchlist without means to defend against alligations and which is preventing him from living in the U.S.A.

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A CLASS ACTION
UNDER RULE 23, F.R.Cv.P.

DEMAND $

CHECK YES only if demanded in complaint:
JURY DEMAND:    ☑ Yes   ☐ No

## VIII. RELATED CASE(S) IF ANY

*(See instructions):*

JUDGE

DOCKET NUMBER

DATE
November 26, 2019

SIGNATURE OF ATTORNEY OF RECORD

P59518

FOR OFFICE USE ONLY

RECEIPT #                AMOUNT                APPLYING IFP                JUDGE                MAG. JUDGE

PURSUANT TO LOCAL RULE 83.11

1.　　　　Is this a case that has been previously dismissed?

☐ Yes
☑ No

If yes, give the following information:

Court: _____

Case No.: _____

Judge: _____

2.　　　　Other than stated above, are there any pending or previously discontinued or dismissed companion cases in this or any other court, including state court? (Companion cases are matters in which it appears substantially similar evidence will be offered or the same or related parties are present and the cases arise out of the same transaction or occurrence.)

☐ Yes
☑ No

If yes, give the following information:

Court: _____

Case No.: _____

Judge: _____

Notes :

# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

**SAMUEL SALLOUM**,

*Plaintiff,*

*vs.*

**CHARLES H. KABLE, IV**, Director of the Terrorist Screening Center, in his official capacity;

**RICK KOPEL**, Principle Deputy Director of the Terrorist Screening Center, in his official capacity;

**G. CLAYTON GRIGG**, Deputy Director of Operations of the Terrorist Screening Center, in his official capacity;

**RUSSELL TRAVERS**, Director of the National Counterterrorism Center, in his official capacity;

**CHAD F. WOLF**, Secretary of United States Department of Homeland Security, in his official capacity;

**DAVID P. PEKOSKE**, Administrator of Transportation Security Administration (TSA), Deputy Secretary of United States Department of Homeland Security (DHS), in his official capacity;

**CHRISTOPHER A. WRAY**, Director of the Federal Bureau of Investigation (FBI), in his official capacity;

Case No.:  19-cv-13505
Hon.:

**PLAINTIFF'S COMPLAINT AND REQUEST FOR TRIAL BY JURY**

AYAD LAW, P.L.L.C.
645 Griswold St., Ste. 2202
DETROIT, MICHIGAN 48226
P: (313) 983-4600 | F: (313) 983-4665

**MARK A. MORGAN**, Commissioner of United States Customs and Border Protection, in his official capacity;

and

**JOHN** and **JANE DOES**, Multiple governmental employees to be identified through discovery, in their individual capacities;

*Defendants.*

AYAD LAW, PLLC
Nabih H. Ayad (P59518)
*Attorney for Plaintiff*
645 Griswold St., Ste 2202
Detroit, MI 48226
P: 313.983.4600
F: 313.983.4665
nayad@ayadlaw.com

## PLAINTIFF CAPTAIN SAMUEL SALLOUM'S COMPLAINT AND REQUEST FOR TRIAL BY JURY

NOW COMES Plaintiff, Captain Samuel Salloum ("Plaintiff"), for himself and on behalf of all others similarly situated, through his attorneys at Ayad Law, PLLC, and states as follows:

## INTRODUCTION

1. The Terrorist Screening Database ("TSDB") is the central terrorist watchlist compiled and maintained by the FBI's Terrorist Screening Center ("TSC")

A Y A D   L A W ,   P . L . L . C .
645 Griswold St., Ste. 2202
DETROIT, MICHIGAN 48226
P: (313) 983-4600 | F: (313) 983-4665

and disseminated to many agencies of United States and foreign governments, State and local law enforcement, and private corporations.

2. Approximately 1600 individuals are "nominated" to be on the TSDB every single day and, as of June 2016, the list was estimated to contain the records of over 1,877,133 individuals.

3. The TSDB is compiled from two major sources, the Terrorist Identities Datamart Environment, a list maintained by the National Counterterrorism Center ("NCTC"), supplies identities of suspected international terrorists and the Federal Bureau of Investigation ("FBI") supplies identities of suspected domestic terrorists.

4. The TSDB then used by more than 60 foreign governments, more than 18,000 state, local, county, city, university and college, tribal, and federal law enforcement agencies and approximately 533 private entities to create their own lists and databases which they use to screen and often deny travelers or applicants for visas, permits, licenses, financial transactions, and/or employment positions, *etc*.

5. The standards used for placing individuals on the list are exceptionally low and it is only required that the TSC find a "reasonable suspicion," not that one has or is about to commit a crime, but that one may have or may intend to engage in the loosely defined "terrorism-related activity."

AYAD LAW, P.L.L.C.
645 Griswold St., Ste. 2202
DETROIT, MICHIGAN 48226
P: (313) 983-4600 | F: (313) 983-4665

A Y A D   L A W,   P. L. L. C.
645 Griswold St., Ste. 2202
DETROIT, MICHIGAN 48226
P: (313) 983-4600 | F: (313) 983-4665

6. The TSDB is demonstrably ineffective, audits have shown that it is highly inaccurate, and has been broadly criticized in the media and the federal courts.

7. One never receives notice that they have been nominated for placement on the TSDB nor notice that they have actually been placed on the TSDB. Likewise, one cannot learn, ever, from an official source whether they are or are not on the list.

8. An individual's inclusion in the TSDB has permanent, far-reaching, and life-altering negative consequences, many of which are harms to their constitutionally protected rights, such as the right to travel, as is Plaintiff's situation.

9. On September 4, 2019, a United States district court found the current policies of the TSC in maintaining and utilizing the TSDB unconstitutional as they violate the procedural due process rights of individuals placed on the list. **Exhibit A,** *Elhady v Kable***, 391 F Supp 3d 562 (ED Va, 2019)**.

## PARTIES

10. Plaintiff is a 53-year-old United States citizen of Lebanese decent, currently residing in Lebanon. Venue is proper because Defendants are officers and employees of the United States and a substantial part of the events giving rise to the claims herein occurred in this judicial district.

A Y A D   L A W ,   P . L . L . C .
645 Griswold St., Ste. 2202
DETROIT, MICHIGAN 48226
P: (313) 983-4600 | F: (313) 983-4665

11. Defendant Charles H. Kable, IV is the Director of the Terrorist Screening Center, and is and has been developing and maintaining the Terrorism Screening Database ("TSDB" or "Watch List") and accepting nominations such as Plaintiff's thereto. Defendant Kable also oversees the dissemination of Plaintiff's label as a "known or suspected terrorist" to all of the agencies and individuals described below. Defendant Kable is being sued in his official capacity only.

12. Defendant Rick Kopel is the Principle Deputy Director of the Terrorist Screening Center and is and has been developing and maintaining the Terrorism Screening Database ("TSDB" or "Watch List") and accepting nominations such as Plaintiff's thereto. Defendant Kopel also oversees the dissemination of Plaintiff's label as a "known or suspected terrorist" to all of the agencies and individuals described below. Defendant Kopel is being sued in his official capacity only.

13. Defendant G. Clayton Grigg is the Deputy Director of Operations of the Terrorist Screening Center developed and maintained the Terrorism Screening Database ("TSDB" or "Watch List") and accepted nominations such as Plaintiff's thereto. Defendant Grigg also oversaw the dissemination of Plaintiff's label as a "known or suspected terrorist" to all of the agencies and individuals described below. Defendant Grigg is being sued in his official capacity only.

AYAD LAW, P.L.L.C.
645 Griswold St., Ste. 2202
DETROIT, MICHIGAN 48226
P: (313) 983-4600 | F: (313) 983-4665

14. Defendant Russell Travers is the Director of the National Counterterrorism Center and is responsible for the nominations that resulted in Plaintiff's placement on the federal terror watch list. He is being sued in his official capacity only.

15. Defendant Chad F. Wolf is the Secretary of United States Department of Homeland Security and is responsible for the nominations that resulted in Plaintiff's placement on the federal terror watch list. He is being sued in his official capacity only.

16. Defendant David P. Peposke is the Administrator of Transportation Security Administration (TSA), Deputy Secretary of United States Department of Homeland Security (DHS). Defendant Peposke oversaw the dissemination of the stigmatizing label of Plaintiff as a "known or suspected terrorist" to the many organizations and individuals described below. He is being sued in his official capacity only.

17. Defendant Christopher A. Wray is the Director of the Federal Bureau of Investigation (FBI) and is responsible for the nomination of Plaintiff and other similarly situated United States citizens to the federal terror watch list. He is being sued in his official capacity only.

18. Defendant Mark A. Morgan is the Commissioner of United States Customs and Border Protection and is responsible for receiving and implementing the federal terror watch list. He is being sued in his official capacity only.

19. Defendants John and Jane Does are the individual agents and governmental employees who physically enforced the violations of Plaintiff's constitutional rights in the Detroit Metropolitan Airport ("DTW"). Plaintiff can only disover their identities through discovery in this action, and will name those defendants individually as soon as possible. The Doe defendants are being sued in their individual capacities only.

## JURISDICTION AND VENUE

20. Under U.S. Const. Art. III §2, this Court has jurisdiction because the rights sought to be protected herein are secured by the United States Constitution. Jurisdiction is proper pursuant to 28 U.S.C. § 1331, *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971), *et seq.*, 5 USC § 702, 5 USC § 706, the United States Constitution, and federal common law.

21. This action seeks declaratory relief pursuant to the Declaratory Judgement Act, 28 USC §§ 2201-2, Rules 57 and 65 of the Federal Rules of Civil Procedure, and pursuant to the general, legal, and equitable powers of this Court.

22. This action seeks damages pursuant to 28 USC § 1343(a)(4) and 28 USC § 1357.

23. Venue is proper under 28 USC § 1391(e) because the Defendants in this action are United States officers or employees and a substantial part of the events

AYAD LAW, P.L.L.C.
645 Griswold St., Ste. 2202
DETROIT, MICHIGAN 48226
P: (313) 983-4600 | F: (313) 983-4665

giving rise to the claims herein occurred in this judicial district for the Eastern District of Michigan.

## FACTUAL BACKGROUND

### THE WATCH LIST

24. The Terrorism Screening Center ("TSC") is an interagency operation within the Federal Bureau of Investigation ("FBI") that also involves the Department of Homeland Security ("DHS"), the National Counterterrorism Center ("NCTC"), the Transpiration Security Administration ("TSA"), and the United States Customs and Border Protection ("CBP"). See **Exhibit A at p. 3.**

25. The Terrorist Screening Database, often abbreviated TSDB, but referred to throughout this Complaint simply as the "Watch List," is a centralized collection of information about listed individuals, including biographic and biometric data, that is compiled and maintained by the TSC.

26. The Watch List is unclassified and is updated continuously and disseminated around the country and the world in real-time. See *Id.*

27. As of June of 2017, approximately 1.2 million individuals, including approximately 4,600 United States citizens or lawful permanent residents were included in on the Watch List. *Id.*

AYAD LAW, P.L.L.C.
645 Griswold St., Ste. 2202
DETROIT, MICHIGAN 48226
P: (313) 983-4600 | F: (313) 983-4665

28. An individual may be "nominated" for inclusion on the Watch List not only by a federal agency of the United States but also by those of foreign governments.

29. Nominations are supposed to then be reviewed by the TSC, to assess whether the individual should be placed on the TSDB.

30. In the TSC's assessment, they use an extremely low evidentiary standard ("reasonable suspicion"), which is further watered down by the definition of "*suspected* terrorist."

31. If the TSC finds that an individual is reasonably suspected of being a suspected terrorist, they are included on the list. See ***Id.***

32. "Suspected terrorist" is defined as "an individual who is reasonably suspected to be engaging in, has engaged in, or intends to engage in conduct constituting, in preparation for, in aid of, or related to terrorism and/or terrorist activities." ***Id.***

33. In other words, an individual may be nominated to the Watch List by a United States or foreign agency, and then included on the Watch List for being suspected of "intend[ing]" to engage in conduct "related to" terrorism "and/or some other "terrorist activities." ***Id.***

34. In their assessment, the TSC may consider the individuals race, ethnicity, religious affiliation, engagement in activities protected by the First Amendment, travel history, associates, business associations, international

AYAD LAW, P.L.L.C.
645 Griswold St., Ste. 2202
DETROIT, MICHIGAN 48226
P: (313) 983-4600 | F: (313) 983-4665

associations, and even the whether the individual has engaged in the "study of Arabic" as information supposedly supporting a "reasonable suspicion" that they are a "suspected terrorist." See **Exhibit A at p. 4**.

35. Since 2009, there have been more than 1.5 million people nominated to the federal terror watch list and in 2013, for example, the Terrorist Screening Center converted 98.96 percent of those nominations into watch list placements.

36. The federal government uses guilt-by-association presumptions to place family members and friends of listed persons on the watch list.

37. Moreover, travel to majority Muslim countries—travel that American Muslims are likely to engage in considering their religion requires them to make holy pilgrimages to the Middle East—is also a basis for Watch-Listing.

38. Despite the fact that inclusion in the Watch List "imposes a substantial burden" on both an individual's "exercise of their rights to international travel and domestic air travel, thus constituting a deprivation of [their] liberty interests," [**Ex. A, at 11 (579)**] **<u>placement on the Watch List does not require any evidence that the individual engaged in criminal activity or will engage in criminal activity in the future</u>**. *Id*. **at 569**.

39. In fact, individuals who are acquitted of a terrorism-related crim may still be included on the Watch List.

AYAD LAW, P.L.L.C.
645 Griswold St., Ste. 2202
DETROIT, MICHIGAN 48226
P: (313) 983-4600 | F: (313) 983-4665

40. The underlying information that supposedly supports an individual's inclusion on the Watch List is not included in the broadly distributed database itself.

41. The FBI, which administers the TSC, disseminates the Watch List to more than 60 foreign governments, more than 18,000 state, local, county, city, university and college, tribal, and federal law enforcement agencies and approximately 533 private entities. ***Id***.

42. **Individuals are never given notice that they have been nominated for inclusion on the Watch List and individuals are never informed that they have been accepted for inclusion on the Watched List.**

43. Outrageously, the federal government has designed its federal terror Watch List to be completely accountability-free. Persons, such as Plaintiff, placed on the federal terror watch list have no means of removing themselves or challenging the basis for their inclusion. **In fact, victims of the government's Watch-Listing cannot even learn from any official source that they are on the list, they must learn that they are on the list through repeated acts of discrimination, harassment, and logical deduction**.

44. An individual's only administrative remedy lies in challenging their suspected inclusion on the Watch List for human error or mistake of identity through the DHS's "TRIP" complaint, they cannot challenge the decision to include them

A Y A D  L A W,  P.L.L.C.
645 Griswold St., Ste. 2202
DETROIT, MICHIGAN 48226
P: (313) 983-4600 | F: (313) 983-4665

on the Watch List and have no way of discovering the underlying factual allegations which facilitated their nomination and inclusion on the Watch List.

45. In this way, the United States government is using secret means to extra-judicially and discriminately impose dire consequences on Plaintiff and thousands of other Americans. The consequences imposed are indefinite, and the victims without constitutionally adequate recourse.

46. Indeed, these Americans, some of whom are children, end up on these secret federal terror watch lists based on mere guesses, hunches, and conjecture and even simply based on matters of race, ethnicity, national origin, religion, or the exercise of their constitutional rights.

47. The consequences of the government's secret, extra-judicial, determinations to those placed on the Watch List are: the inability to fly on airplanes without an alert popping up on the airport security worker's screen stating that those on the Watch List are a "known or suspected terrorist;" the Watch-Listed individuals being detained and interrogated for several hours prior to every flight; the Watch-Listed individuals having their digital devices (cell phone and/or laptops) seized for hours at a time and all of the information on the downloaded and then disseminated; and the indignity and stigma which comes from the United States government communicating to thousands of federal agents, private contractors, businesses, state and local police, the captains of

AYAD LAW, P.L.L.C.
645 Griswold St., Ste. 2202
DETROIT, MICHIGAN 48226
P: (313) 983-4600 | F: (313) 983-4665

sea vessels, and foreign governments that they are, or associate with, terrorists.

48. Over the years, Media accounts have made clear that the federal TSDB is the result of bigotry and overzealousness on the part of the government and its agents. Individuals are placed on the Watch List *en masse*, without being charged, without being convicted, and often without being the subject of an ongoing investigation.

49. Two leaked government documents and a governmental report, which include the March 2013 Watchlisting Guidance (**Exhibit B**), the Directorate of Terrorist Identities (DTI): Strategic Accomplishments 2013 (**Exhibit C**), and the Department of Justice's March 2014 Audit of the Federal Bureau of Investigations' Management of Terrorist Watchlist (**Exhibit D**) reveal that the care the federal government takes in creating its federal terror watch list is void of proper processing, which in turn results in life-altering consequences that flow from these illegal actions.

50. In 2013 alone, the federal government made 468,749 nominations to the Watch List.

51. As one federal court recently stated in *Gulet Mohamed v. Eric R. Holder, Jr. et al.* (United States District Court, Eastern District of Virginia, Case No. 11-cv-00050 (2011)): In sum, the [Watch List] assumes that there are some American citizens who are simply too dangerous to be permitted to fly, no

AYAD LAW, P.L.L.C.
645 Griswold St., Ste. 2202
DETROIT, MICHIGAN 48226
P: (313) 983-4600 | F: (313) 983-4665

matter the level of pre-flight screening or on-flight surveillance and restraint, even though those citizens cannot be legally arrested, detained, or otherwise restricted in their movements or conduct."

PLAINTIFF'S INJURIES

52. The plaintiff in this case is Captain Samuel Salloum ("Plaintiff" or "Captain Salloum").

53. Plaintiff was born in Lebanon in 1965 and is a Muslim.

54. Plaintiff left Lebanon for Italy in 1983 at age 17, where he enrolled in the Italian Merchant Marine.

55. Plaintiff moved to the United States in 1994 and became a United States citizen in 2004.

56. Plaintiff is a successful businessman and entrepreneur and is the chairman of both Axiolog Group, LLC and World Logistics Council Limited.

57. Plaintiff does business in multiple countries throughout the world and, therefore, has bank accounts in multiple countries.

58. Plaintiff is also co-chairman of the Global Coalition for Efficient Logistics, a non-profit and private business partnership focused on overseas trade efficiency, reduction of carbon emissions, and the enhancement of cargo security against acts of terrorism, among other things.

59. Plaintiff has registered patents and trademarks with the WIPO and the USA under his name.

AYAD LAW, P.L.L.C.
645 Griswold St., Ste. 2202
DETROIT, MICHIGAN 48226
P: (313) 983-4600 | F: (313) 983-4665

60. Plaintiff was recognized by USA Today as a Muslim CEO protecting the United States' borders with his work in developing a system to automatically detect and flag for inspection by border agents or coast guard 'anomalous' cargo shipments. (For example, a shipment of books from a printer that has not ordered enough paper to create the amount of books supposedly being shipped.) **Exhibit E, USA Today article**.

61. Plaintiff has co-authored prestigious articles in official G20 and B20 publications with notable officials including H.E. Joko Widodo, President of Indonesia, H.E. Yves Leterme, former Prime Minister of Belgium, H.E. Dirk Niebel, former German Minister of Economic Development, Mr. Donald Johnston, former OECD Secretary General and Dr. Merza Hasan, Dean of the World Bank Executive Board. **Exhibit F, G20 Articles Co-Authored by Plaintiff**.

62. In 2005, Plaintiff even testified as an expert on the best practices for securing the United States ports from terrorism before the United States House of Representatives sub-committee on the Best Business Practices on Securing America's Borders. **Exhibit G, Plaintiff's July 23, 2003 Congressional Testimony (Named therein as Captain Houssam Salloum), p. 11**.

63. Plaintiff's testimony influenced 7 out of 10 Presidential Security directives. (HSPD #13 and NSPD #41.)

A Y A D  L A W,  P.L.L.C.
645 Griswold St., Ste. 2202
DETROIT, MICHIGAN 48226
P: (313) 983-4600 | F: (313) 983-4665

64. Plaintiff's businesses have been audited four times by the Internal Revenue Service with no wrongdoing found.

65. When Plaintiff travels *via* United States airports, he is detained and interrogated every single time, for up to three to four hours. His computer and phone are taken and the data downloaded off of them and made available to all of the individuals whom the Watch List is made available to.

66. This happens when Plaintiff is travelling both domestically and to foreign countries.

67. For this reason, Plaintiff no longer travels with his phone or computer, as the delay in downloading his data often caused greater delay.

68. Plaintiff is asked virtually identical questions every time he is detained, including why he travels to countries such as Lebanon, Indonesia, Malaysia, Turkey, and China; who his family members are and where they live; and why he has multiple companies and bank accounts located outside the United States.

69. Those who have interrogated Plaintiff have also expressed concerns that he 'could be recruited by Hezbollah' or 'may donate to Hezbollah.' Plaintiff was also once incorrectly quoted by one of his interrogators as having previously stated that Hezbollah had tried to recruit him while he was at sea.

70. For that reason, the TSC is recording inaccurate information about Plaintiff in their Watch List.

AYAD LAW, P.L.L.C.
645 Griswold St., Ste. 2202
DETROIT, MICHIGAN 48226
P: (313) 983-4600 | F: (313) 983-4665

71. Plaintiff has been interrogated both in a separate room and, humiliatingly, beside the airport security line.

72. On one occasion, one of Plaintiff's interrogators stated that because his family was from Germany, they were questioned after World War II, implying that Plaintiff was being questioned because he was from Lebanon.

73. Plaintiff's business partner who was born in the United States and is a United States citizen has virtually all of the same business ties and associations as Plaintiff, including bank accounts and businesses in the same foreign countries, yet he is evidently not on the Watch List as he does not suffer the extreme burden of being interrogated for hours each time he flies.

74. Defendants' actions in 'Watch-Listing' Plaintiff has caused great economic harm to him and his businesses.

75. In 2008 Plaintiff moved his home from the United States to Lebanon because of the extreme burden of the enhanced screening whenever Plaintiff attempted to travel, something that is necessary for his businesses.

76. The extreme burden placed on Plaintiff while traveling, by Defendants, has caused him to not pursue appointments to secure $300,000,000 in capital to expand his business, which resulted in approximately $50,000,000 of additional operating costs to Plaintiff businesses.

77. Plaintiff's business also acquired real estate at a cost of approximately $4,000,000 to house operations in the United States, but because of the

AYAD LAW, P.L.L.C.
645 Griswold St., Ste. 2202
DETROIT, MICHIGAN 48226
P: (313) 983-4600 | F: (313) 983-4665

extreme burden Defendants placed on Plaintiff while travelling he was unable to manage affairs in developing operations in the United States.

78. Similarly, Plaintiff purchased a personal residence in the United States for roughly $1,100,000 but, again because of the extreme burden placed on his travels by Defendants, he could not both reside within the United States and successfully run his businesses and was forced to abandon his house and is selling it at a loss of approximately $300,000.

79. Because of the extreme burden placed on Plaintiff's travel by Defendants, Plaintiff cannot travel within or through the United States with employees, to work while travelling, not only because of the added expense and inefficiency of his employees being delayed for hours each boarding, but also because of the extreme embarrassment and stigma of being labelled a "known or suspected terrorist" by the United States government which would have devastating effects on his businesses' moral and no doubt cost him valuable employees.

80. Because of Defendants inclusion of Plaintiff on the Watch List, he cannot travel with potential business partners or their agents owing to the humiliation and stigma of being a "known or suspected terrorist" which would deter any reasonable potential business partner, not to mention the extended travel time which many businesses simply cannot afford.

AYAD LAW, P.L.L.C.
645 Griswold St., Ste. 2202
DETROIT, MICHIGAN 48226
P: (313) 983-4600 | F: (313) 983-4665

81. Plaintiff has filed multiple "TRIP" complaints with the Department of Homeland security requesting that his erroneous inclusion on the Watch List as a "known or suspected terrorist" be corrected.

82. On July 26, 2016, the Department of Homeland Security sent Plaintiff a letter stating that:

> DHS has researched and completed our review of your case. DHS TRIP can neither confirm nor deny any information about you which may be within federal watchlists or reveal any law enforcement sensitive information. However, we have made any corrections to records that our inquiries determined were necessary, including, as appropriate, notations that may assist in avoiding incidents of misidentification.
>
> ****
>
> This letter constitutes our final agency decision.

**Exhibit H, Plaintiff's TRIP Application and Recent Flight Record**.

83. Because of Defendants' actions in improperly labelling Plaintiff a known or suspected terrorist and refusing him notice of the reasons for their decision, they have intentionally deprived him any means to meaningfully contest his placement on the Watch List.

84. Because of Defendants' actions in improperly labelling Plaintiff a known or suspected terrorist, Plaintiff's fiancée, the mother of Plaintiff's two daughters, cannot live in the United States as the United States Lebanese Consulate denied her United States visa owing to Plaintiff's label as a "known or suspected terrorist."

AYAD LAW, P.L.L.C.
645 Griswold St., Ste. 2202
DETROIT, MICHIGAN 48226
P: (313) 983-4600 | F: (313) 983-4665

85. Plaintiff's fiancée was formerly his wife, but because she was denied her visa while married to Plaintiff for Plaintiff's inclusion on the Watch List, Plaintiff and his wife divorced and she is now his fiancée.

86. Because Plaintiff's fiancée cannot live in the United States with her two daughters, Plaintiff's oldest daughter cannot attend the United States university which she dreamed of.

87. Plaintiff's youngest daughter is in need of a medical procedure which was to be performed in the United States, but, because her mother cannot be with her in the United States owing to the United States Lebanese Consulate denying her visa, their daughter must be treated in a suboptimal location outside the United States.

88. Finally, Plaintiff's inability to maintain a domicile, let alone a frequent presence, in the United States has unfortunately devastated his relationship with his brother, a United States citizen and resident.

89. Attached to this Complaint at **Exhibit I, Plaintiff's TRIP Application and Recent Flight Record**, is Plaintiff's most recent TRIP application of September 10, 2019, which includes a log of all of Plaintiff's recent flights to and from the Detroit Metropolitan Airport ("DTW") showing that Plaintiff has greatly limited his travels to the United States to a mere two or three trips per year owing to Defendants unconstitutional actions against Plaintiff and the extreme burden to Plaintiff resulting therefrom.

AYAD LAW, P.L.L.C.
645 Griswold St., Ste. 2202
DETROIT, MICHIGAN 48226
P: (313) 983-4600 | F: (313) 983-4665

90. During each of the flights enumerated at **Exhibit I**, Plaintiff was subject to the extreme burden described above and below in this Complaint, including the humiliating and repetitive interrogations, hours long personal and property seizures, *etc*.

## COUNT I
### Fifth Amendment Procedural Due Process Violation
### Lack of Due Process in Watch List placement and inability of the TRIP remedy
### (*as to all Defendants*)

91. Plaintiff incorporates all of the above paragraphs as if fully reiterated herein.

92. Plaintiff has a constitutionally protected liberty interest in his freedom of movement, the right to freely travel in the United States, and to-and-from the United States, without undue burden being placed upon him by the government.

93. Plaintiff has a constitutionally protected liberty interest in being free from the stigma of being a "known or suspected terrorist" which is the classification under which he is labelled in the Watch List.

94. Plaintiff has a constitutionally protected liberty interest in being free from punishment without conviction or trial.

95. Plaintiff's above-mentioned rights were infringed upon by the government via the Terrorist Screening Center's nomination of Plaintiff to its Watch List without the government providing Plaintiff notice, as Plaintiff only realized his placement on the list from his liberty interests being deprived.

AYAD LAW, P.L.L.C.
645 Griswold St., Ste. 2202
DETROIT, MICHIGAN 48226
P: (313) 983-4600 | F: (313) 983-4665

96. The TRIP application process, which Plaintiff completed, wholly fails to provide Plaintiff with an adequate opportunity to be heard, as Plaintiff has never, despite his efforts, been informed of the reasons for his placement on the list and is left to defend allegations which are the product of his own guesswork. Therefore, Plaintiff is allowed no meaningful opportunity to contest his placement on the Watch List.

97. The above-mentioned actions by Defendants have harmed Plaintiff by placing an unreasonable burden on Plaintiff's air travel within and to or from the United States, preventing him from domiciling in the United States, growing his business through lucrative business deals in the United States and travelling with prominent businessmen through United States airports, forcing him to sell his properties at a loss, embarrassing Plaintiff as he knows many individuals he encounters see that he is labelled a "known or suspected terrorist," intimidating Plaintiff into second-guessing his legitimate behaviors as he does not know what actions caused him to be labelled as a known or suspected terrorist, and preventing him from travelling with his phone or laptop.

98. WHEREFORE, Plaintiff requests this Honorable Court rule that one's placement on the Watch List without due process is unconstitutional and grant the declaratory and injunctive relief described below in Plaintiff's Conclusion

AYAD LAW, P.L.L.C.
645 Griswold St., Ste. 2202
DETROIT, MICHIGAN 48226
P: (313) 983-4600 | F: (313) 983-4665

and Relief Requested, plus costs and attorneys' fees and all other relief this Court deems just and equitable.

**COUNT II**
**Fifth Amendment Due Process Violation**
**Lack of Substantive Due Process in Placement on List**
(***as to all Defendants***)

99. Plaintiff incorporates all of the above paragraphs as if fully reiterated herein.

100.    Plaintiff has a constitutionally protected liberty interest in his freedom of movement, the right to freely travel in the United States, and to-and-from the United States, without undue burden being placed upon him by the government.

101.    Plaintiff has a constitutionally protected liberty interest in being free from the stigma of being a "known or suspected terrorist" which is the classification under which he is labelled in the Watch List.

102.    Plaintiff has a constitutionally protected liberty interest in being free from punishment without conviction or trial.

103.    Plaintiff's above-mentioned rights were infringed upon by the government via the Terrorist Screening Center's nomination of Plaintiff to its Watch List without any legitimate reason and in violation of the requirement that nominations not be solely based on race, ethnicity, national origin, religious affiliation, or First Amendment protected activities.

AYAD LAW, P.L.L.C.
645 Griswold St., Ste. 2202
DETROIT, MICHIGAN 48226
P: (313) 983-4600 | F: (313) 983-4665

104.     Plaintiff has not engaged in any activity that would give rise to even a reasonable suspicion that he has, is, or intends to engage in "terrorism-related" activity.

105.     Plaintiff's American-born business partner is not on the Watch List despite being similarly situated to Plaintiff in all ways other than national origin.

106.     Defendants' designation of Plaintiff as a "known or suspected terrorist," along with all of the burdens on and loss of liberty that comes with it, have the effect of treating Plaintiff as a second-class citizen.

107.     Defendants' Watch List lacks a compelling government interest as its true intended purpose is simply to force middle-eastern and Muslim Americans into foregoing their right to counsel during interrogation and ultimately to become informants and spies and further prevent them from exercising their right to travel freely.

108.     Defendants' Watch List is not narrowly tailored as it is demonstrably ineffective and obvious, more effective, and less costly alternatives exist.

109.     The above-mentioned actions by Defendants have harmed Plaintiff by placing an unreasonable burden on Plaintiff's air travel within and to or from the United States, preventing him from domiciling in the United States, growing his business through lucrative business deals in the United States and travelling with prominent businessmen through United States airports, forcing

AYAD LAW, P.L.L.C.
645 Griswold St., Ste. 2202
DETROIT, MICHIGAN 48226
P: (313) 983-4600 | F: (313) 983-4665

him to sell his properties at a loss, embarrassing Plaintiff as he knows many individuals he encounters see that he is labelled a "known or suspected terrorist," intimidating Plaintiff into second-guessing his legitimate behaviors as he does not know what actions caused him to be labelled as a known or suspected terrorist, and preventing him from travelling with his phone or laptop.

110.    WHEREFORE, Plaintiff requests this Honorable Court grant the declaratory and injunctive relief described below in Plaintiff's Conclusion and Relief Requested, plus costs and attorneys' fees and all other relief this Court deems just and equitable.

**COUNT III**
**Fourth Amendment Violation**
**Illegal Seizing of Data on Cell Phones**
(*as to all Defendants*)

111.    Plaintiff incorporates all of the above paragraphs as if fully reiterated herein.

112.    Plaintiff has a legitimate privacy and possessory right in his cell phone, laptop, and the data contained therein.

113.    Plaintiff's Fourth Amendment right against illegal search and seizure was violated when his phone, laptop, and the data contained therein were seized and disseminated to domestic and foreign, private and public, organizations and individuals.

AYAD LAW, P.L.L.C.
645 Griswold St., Ste. 2202
DETROIT, MICHIGAN 48226
P: (313) 983-4600 | F: (313) 983-4665

114.     Plaintiff suffered an irreversible harm in that the information seized and

disseminated, and which continues to be disseminated, is private, personal,

and/or proprietary as Plaintiff, a United States citizen, does not check his

constitutional rights at the border when Plaintiff travels abroad.

115.     WHEREFORE, Plaintiff requests this Honorable Court grant the

declaratory and injunctive relief described below in Plaintiff's Conclusion and

Relief Requested, plus costs and attorneys' fees and all other relief this Court

deems just and equitable.

**COUNT IV**
**Fourth Amendment Violation**
**Illegal Seizure of Person**
(***as to all Defendants***)

116.     Plaintiff incorporates all of the above paragraphs as if fully reiterated

herein.

117.     Plaintiff's person was and will be unconstitutionally seized during his

air travel in and through the United States.

118.     The seizure of Plaintiff's person at such times constitutes an irreparable

harm.

119.     Defendants' seizure of Plaintiff's person has been and will be for

unreasonable lengths of time, unnecessary even to fulfil the government's

illegitimate interest, and has been and will be witnessed by, or become known

to, potential customers or business partners of Plaintiff's.

AYAD LAW, P.L.L.C.
645 Griswold St., Ste. 2202
DETROIT, MICHIGAN 48226
P: (313) 983-4600 | F: (313) 983-4665

120.     Plaintiff's injury by Defendants continues to grow every time Plaintiff attempts to exercise his right to freely travel in and through the United States without suffering an undue burden from the government.

121.     Defendants and the public will suffer no negative consequences should Defendants be forced to stop seizing the person of Plaintiff.

122.     WHEREFORE, Plaintiff requests this Honorable Court grant the declaratory and injunctive relief described below in Plaintiff's Conclusion and Relief Requested, plus costs and attorneys' fees and all other relief this Court deems just and equitable.

### COUNT V
### Fifth Amendment Equal Protection Violation
### Discrimination based on Race, Religion, Ethnicity, Nationality
### (*as to all Defendants*)

123.     Plaintiff incorporates all of the above paragraphs as if fully reiterated herein.

124.     Defendants' actions of stigmatizing individuals by putting them on their terrorist watch list, labeling them as a "known or suspected terrorist," and then disseminating that information to the many organizations and individuals described above, without constitutionally adequate legal mechanism, are discriminatory.

125.    Defendants' above-described actions target people who are racially Lebanese, of Lebanese ethnicity and/or national origin, and/or people of Muslim religious affiliation for distinctive, disparate, treatment.

126.    Plaintiff's American-born business partner is not on the Watch List despite being similarly situated to Plaintiff in all ways other than national origin.

127.    Defendants' actions in nominating Plaintiff and other similarly situated American citizens to the federal terror watch list blatantly violate the requirements that 'nominations' must not be solely based on race, ethnicity, national origin, religious affiliation, or First Amendment protected activities." 49 USC § 114(h)(3).

128.    By placing Plaintiff and other similarly situated American citizens on the federal terror watch list, Defendants have treated Plaintiff and other similarly situated American citizens like second-class citizens.

129.    Defendants' above-described actions were motivated by the religious status of Plaintiff and other similarly situated American citizens and on the basis of constitutionally-protected free exercise of religion of Plaintiff and other similarly situated American citizens.

130.    Defendants' above-described actions have had a discriminatory effect upon, and have disparately impacted, Plaintiff and other similarly situated American citizens who are Lebanese-American or Muslim-American

AYAD LAW, P.L.L.C.
645 Griswold St., Ste. 2202
DETROIT, MICHIGAN 48226
P: (313) 983-4600 | F: (313) 983-4665

travelers, and not travelers of other national origins, ethnicities, and faiths and/or religious affiliations.

131. Defendants' above-described actions, policies, course of conduct, or pattern of practice that mandate or permit the above-described treatment of Plaintiff and other similarly situated American citizens does not serve a compelling state interests or a legitimate or public purpose, nor are they the least restrictive means or narrowly tailored to achieve any such interest.

132. WHEREFORE, Plaintiff requests this Honorable Court grant the declaratory and injunctive relief described below in Plaintiff's Conclusion and Relief Requested, plus costs and attorneys' fees and all other relief this Court deems just and equitable.

## COUNT VI
## First Amendment Free Association Violation
### (*as to all Defendants*)

133. Plaintiff incorporates all of the above paragraphs as if fully reiterated herein.

134. Plaintiff has a constitutionally protected right in the freedom of familial association, guaranteed by the First Amendment.

135. Plaintiff has a constitutionally protected right in the freedom of expressive association, guaranteed by the First Amendment.

136. Plaintiff's right to his free association is unduly burdened by Defendants' actions in nominating Plaintiff to the Watch List, in ensuring that

AYAD LAW, P.L.L.C.
645 Griswold St., Ste. 2202
DETROIT, MICHIGAN 48226
P: (313) 983-4600 | F: (313) 983-4665

Plaintiff be subjected to hours-long interrogations every time he travels, which places an extreme burden on his familial, business, and social life and which is visibly obvious to anyone who he might travel with.

137. Defendants' actions have and are directly infringing on Plaintiff's right to associate with his family, including his United State resident and citizen brother.

138. Defendants' actions are directly infringing on Plaintiff's right to associate with Lebanese and/or Lebanese-Americans, whom it is necessary for him to associate with and express himself as one of them and to grow his business.

139. The group of Lebanese and/or Lebanese-American people is constitutionally protected because government actions which restrict liberty interests must not be "solely based on race, ethnicity, national origin, religious affiliation, or First Amendment protected activities." 49 USC § 114(h)(3).

140. The government's actions demonstrably infringe upon Plaintiff's and other Lebanese and Lebanese-Americans to association in an unduly burdensome manner.

141. Defendants' actions burdening Plaintiff and other Lebanese and Lebanese-Americans lack a compelling government interest as its true intended purpose is simply to force middle-eastern and Muslim Americans into foregoing their right to counsel during interrogation and ultimately to

AYAD LAW, P.L.L.C.
645 Griswold St., Ste. 2202
DETROIT, MICHIGAN 48226
P: (313) 983-4600 | F: (313) 983-4665

become informants and spies and further prevent them from exercising their right to travel freely.

142.    Defendants' actions in placing Plaintiff and other Lebanese and Lebanese-Americans on the Watch List is not narrowly tailored as it is demonstrably ineffective and obvious, more effective, and less costly alternatives exist.

143.    The above-mentioned actions by Defendants have harmed Plaintiff and other Lebanese and Lebanese-Americans by placing an unreasonable burden on their air travel within and to or from the United States, preventing Plaintiff and others from domiciling in the United States, preventing Plaintiff from visiting with his family, withering and all but breaking Plaintiff's familial bonds with his family that resides in the United States, preventing them from growing their business through lucrative business deals in the United States and travelling with prominent businessmen through United States airports, forcing Plaintiff specifically to sell his properties at a loss, and embarrassing and humiliating Plaintiff and others similarly situated as they know many individuals they encounter see that they are labelled a "known or suspected terrorist."

144.    WHEREFORE, Plaintiff requests this Honorable Court grant the declaratory and injunctive relief described below in Plaintiff's Conclusion and

AYAD LAW, P.L.L.C.
645 Griswold St., Ste. 2202
DETROIT, MICHIGAN 48226
P: (313) 983-4600 | F: (313) 983-4665

Relief Requested, plus costs and attorneys' fees and all other relief this Court deems just and equitable.

**COUNT VII**
**Violation of US Constitution**
**Non-Delegation**
(*as to all Defendants*)

145. Plaintiff incorporates all of the above paragraphs as if fully reiterated herein.

146. Congress has not provided the Executive Branch with intelligible principles from which the Executive can implement its watch list schemes regarding civil aviation and national security.

147. Congress has not directed the Executive Branch to create either a No Fly List or a Selectee List.

148. Congress has not authorized the Executive Branch to utilize the federal terror watch list to encourage federal law enforcement to detain individuals such as Plaintiff based on their watch list status.

149. Congress has not authorized the Executive Branch to disseminate the terror watch list to federal law enforcement agencies and officials, state and local authorities, foreign countries, private countries, private corporations, private contractors, airlines, financial institutions, the captains of seafaring vessels, among other official and private entities and individuals.

AYAD LAW, P.L.L.C.
645 Griswold St., Ste. 2202
DETROIT, MICHIGAN 48226
P: (313) 983-4600 | F: (313) 983-4665

150.     The Executive Branch's assignment of the watch listing function to TSC violates Congress's directive that TSA determine who belongs on federal terror watch lists and the consequences that flow from being on those lists.

151.     Congress has not delegated to TSA the authority to create a process that can culminate in the removal of individuals from the TSDB.

152.     In the alternative, Congress's delegation to TSA to create a redress process is defective because the Executive has allocated watch list authority in a manner that prevents TSA from creating a redress process.

153.     As a result, Defendants have illegally acted beyond their authority, irreparably harming Plaintiff and other similarly situated United States citizens.

154.     WHEREFORE, Plaintiff requests this Honorable Court grant the declaratory and injunctive relief described below in Plaintiff's Conclusion and Relief Requested, plus costs and attorneys' fees and all other relief this Court deems just and equitable.

## CONCLUSION AND RELIEF REQUESTED

In the nearly 22 years that Plaintiff lived in the United States, he and his family made many friendships and bonds with United States residents that the government's unlawful actions have withered and, in many cases, broken. Not only will the relief sought by Plaintiff here right the constitutional wrong being perpetrated against Plaintiff and many other similarly situated United States citizens, but it will also

AYAD LAW, P.L.L.C.
645 Griswold St., Ste. 2202
DETROIT, MICHIGAN 48226
P: (313) 983-4600 | F: (313) 983-4665

allow Plaintiff to live in the United States with his family which will allow him to devote more time in the United States to raise capital to expand business operations and conduct business development activities to enroll and benefit United States technology businesses utilizing his company's technology platform. Just one of Plaintiff's businesses, which is located in Michigan generated a total payroll, including property and sales taxes, of approximately $1.2 million from the years of 2015 to 2018 alone. The righting of the government's continuous wrongs against Plaintiff will benefit both Plaintiff, his family, and the United States, its economy, and its workers.

Plaintiff is a patriotic American Citizen being forced to live in exile in a country on the brink of civil war and collapse, without ever having been accused of a crime, without ever being charged, and without ever even receiving notice of what actions may have offended the United States' government, despite his admirable efforts.

WHEREFORE, Plaintiff respectfully requests that this Honorable Court enter judgement in Plaintiff's favor holding the Watch List unconstitutional and order the following relief:

    a) Declare that Defendants' policies, practices, and customs violate the Fourth and Fifth Amendments to the United States Constitution, the Administrative Procedure Act, and the non-delegation doctrine of the United States Constitution;

AYAD LAW, P.L.L.C.
645 Griswold St., Ste. 2202
DETROIT, MICHIGAN 48226
P: (313) 983-4600 | F: (313) 983-4665

b) Place a permanent injunction on Defendants requiring them to remove Plaintiff from any and all of their watch lists, including the TSDB, and notify all agencies, domestic and foreign of this removal;

c) Place a permanent injunction on Defendants requiring them to destroy all data downloaded from Plaintiff's phones or computers, at any time, however and wherever stored.

d) Award Plaintiff reasonable attorneys' fees, costs, and expenses pursuant to 28 USC § 2412; and

e) Award any and all other relief which this Court deems just and equitable.

The Court should, at a minimum, enter a holding that Plaintiff's inclusion on the Watch List is unconstitutional as there is already a federal court ruling to that effect which binds these parties, in this jurisdiction.

## JURY DEMAND

Plaintiff respectfully demands a trial-by-jury on all of the above causes of action.

Respectfully submitted,

Ayad Law, PLLC

*/s/Nabih H. Ayad*
Nabih H. Ayad (P59518)
AYAD LAW, PLLC
645 Griswold St., Ste. 2202
Dated: November 26, 2019            Detroit, MI 48226

AYAD LAW, P.L.L.C.
645 Griswold St., Ste. 2202
DETROIT, MICHIGAN 48226
P: (313) 983-4600 | F: (313) 983-4665