PAR 21

UNCLASSIFIED

**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**ALEXANDRIA DIVISION**

| | | |
|---|---|---|
| ANAS ELHADY, *et al.* | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | Case No. 1:16-CV-375 |
| v. | ) | |
| | ) | |
| CHARLES H. KABLE, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

## DECLARATION OF MICHAEL J. ORLANDO

I, Michael J. Orlando, hereby declare the following:

    1.    (U)  I am the Acting Assistant Director of the Counterterrorism Division, Federal Bureau of Investigation ("FBI"), United States Department of Justice.

    2.    (U)  As Acting Assistant Director, I am the chief supervisory official of the counterterrorism investigative activities of the FBI, including any role the Counterterrorism Division plays in the nomination of individuals to the Terrorist Screening Center's (TSC's) Terrorist Screening Database (TSDB). I am also responsible for the protection of national security information within the Counterterrorism Division, including the sources, methods, and techniques used by the FBI in the collection of national security information. Thus, I have been authorized by the Director of the FBI to execute declarations and affidavits in order to protect such information. The matters stated in this declaration are based on my personal knowledge, my background, training, and experience relating to counterterrorism, my consideration of

1

UNCLASSIFIED

SALLOUM-TSC-00284

Case 4:19-cv-13505-MFL-RSW ECF No. 37-25, PageID.1568 Filed 06/21/21 Page 3 of 21
Case 1:16-cv-00375-AJT-JFA Document 299-3 Filed 03/11/19 Page 3 of 21 PageID# 9737
UNCLASSIFIED

information provided to me in my official capacity, and my evaluation of that information.[1] My conclusions have been reached in accordance therewith.

3.    (U) Through the exercise of my official duties, I have become familiar with this civil action in which the Plaintiffs, who allege they are all U.S. citizens, challenge their supposed placement in the TSDB and, in particular, their supposed placement on the Government's Selectee List. I understand that in their remaining claims in this case, Plaintiffs assert that their supposed placement on the TSDB violates their right to procedural due process because they were not provided notice or a hearing and because their alleged placement deprives them of a liberty interest in connection with their travel. *See* Amended Complaint at ¶¶ 559-569. Plaintiffs also allege that they have a right to be free from "false government stigmatization" when it arises in conjunction with additional consequences that they claim follow from being placed on a watchlist. Amended Complaint at ¶ 564. . Plaintiffs also seek an order requiring the Government to provide individuals in the TSDB with notice of the reasons for their inclusion in the TSDB and a meaningful opportunity to contest their inclusion in the TSDB. I make this declaration in support of the defendants' motion for summary judgment with respect to these claims.

4.    (U) This declaration addresses: (a) the FBI's authorities and responsibilities in combating terrorist threats, including the role in this effort played by the TSDB; (b) nominations to the TSDB; (c) the FBI's use and dissemination of TSDB information; and (d) the harms to national security that would result if the Government were required to disclose an individual's

---

[1] (U) The information in this declaration is unclassified. Accordingly, the paragraphs in this declaration are marked with a "U".

SALLOUM-TSC-00285

JRDH-TSC-0003063

Case 4:19-cv-13505-MFL-RSW  ECF No. 37-25, PageID.1569  Filed 06/21/21  Page 4 of 21
Case 1:16-cv-00375-AJT-JFA  Document 299-3  Filed 03/11/19  Page 4 of 21 PageID# 9738
UNCLASSIFIED

status with respect to the TSDB beyond the disclosure allowed under the Department of
Homeland Security Traveler Redress Inquiry Program (DHS TRIP).

5.      (U) The information provided herein is illustrative as a general matter, and in
providing this information, I do not confirm or deny whether any of the plaintiffs is or is not in
the TSDB.[2]  As explained more fully below, any requirement that the Government on the whole,
and the FBI as a nominating agency, provide additional information to individuals about their
TSDB status beyond that contemplated by the DHS TRIP procedures would risk significant harm
to ongoing counterterrorism investigative or intelligence activities, to the sources and methods
used in those activities, and to the overall national security interests of the United States.  In
particular, the use of surveillance, confidential human sources, national security process, and
other sensitive sources may be compromised if additional information regarding a person's
TSDB status must be disclosed.  In addition, because many of the topics discussed herein
implicate national security and law enforcement investigative information, this declaration does
not disclose all pertinent details about matters discussed herein, but only information that can be
disclosed publicly.

## (U)  THE FBI'S ROLES AND RESPONSIBILITIES

6.      (U) The FBI's mission is to protect and defend the United States against terrorist
and foreign intelligence threats, to uphold and enforce the criminal laws of the United States, and
to provide leadership and criminal justice services to federal, state, municipal, and international
agencies and partners; and to perform these responsibilities in a manner that is responsive to the

---

[2]  (U) In the interest of brevity, this declaration refers to unspecified individuals with the
pronouns "he" or "him," as opposed to "he or she" or "him or her."  Unless otherwise indicated,
"he" or "him" could refer to a male or a female individual.

SALLOUM-TSC-00286

JRDH-TSC-0003064

Case 4:19-cv-13505-MFL-RSW ECF No. 37-25, PageID.1570 Filed 06/21/21 Page 5 of 21
Case 1:16-cv-00375-AJT-JFA Document 299-3 Filed 03/11/19 Page 5 of 21 PageID# 9739
UNCLASSIFIED

needs of the public and is faithful to the Constitution of the United States. In order to defend the country from a range of national security and major crime threats, the FBI uses an intelligence-driven and threat-focused approach, combining its investigative and intelligence operations to be more predictive and preventative, more aware of emerging threats, and better able to stop them before they turn into crimes or acts of terrorism.

7.      (U) The FBI's top priority is protecting the United States from terrorist attacks. Working closely with its partners, the FBI uses its investigative and intelligence capabilities to neutralize terrorist cells and operatives in the United States, to help dismantle extremist networks worldwide, and to cut off financing and other forms of support provided by terrorist sympathizers. In carrying out the FBI's paramount mission of securing the nation from terrorism, criminal prosecution is only one of several means that the FBI uses to protect national security.

8.      (U) The FBI and other federal agencies use the TSDB as preventative measures to protect against terrorist threats. Unlike in the criminal judicial process, where the FBI collects and then presents evidence of a crime already committed for purposes of prosecution, TSDB nominations are made based in part on sensitive intelligence information, sources, and methods that cannot be publicly disclosed without significant harm to ongoing national security investigations and intelligence-gathering. Inclusion in the TSDB is based on an assessment of the threat of terrorist activity posed by a particular individual. TSDB determinations are made in a fluid, intelligence-driven environment based on the most current information.

9.      (U) As with any other aspect of the FBI's investigative or intelligence-gathering operations, nominations to the TSDB must conform to FBI policies and procedures. This includes the requirement, set forth in both the Attorney General's Guidelines for Domestic FBI

SALLOUM-TSC-00287

JRDH-TSC-0003065

Case 4:19-cv-13505-MFL-RSW ECF No. 37-25, PageID.1571 Filed 06/21/21 Page 6 of 21
Case 1:16-cv-00375-AJT-JFA Document 299-3 Filed 03/11/19 Page 6 of 21 PageID# 9740
UNCLASSIFIED

Operations and the FBI's Domestic Investigations and Operations Guide that FBI agents consider and, if reasonable based on the circumstances of the investigation, use the least intrusive means or method to protect national security. In addition, a fundamental principle of the Attorney General's Guidelines, and of the FBI's investigations and operations, is that investigative activity may not be based solely on the exercise of rights guaranteed by the First Amendment to the United States Constitution. Investigative activity for the sole purpose of monitoring the exercise of First Amendment rights is prohibited.

## (U) THE TSDB NOMINATION PROCESS

10. (U) I understand that the TSDB nomination process and the No Fly and Selectee Lists are discussed in detail in the declaration of TSC Deputy Director Timothy P. Groh being submitted concurrently herewith, so I will not repeat all those details here. In brief, as one of numerous members of the TSDB watchlisting community, the FBI nominates known or suspected terrorists for inclusion in the TSDB. Nominations to the TSDB must satisfy minimum identifying criteria to allow screening agencies to be able to discern a match, and include sufficient substantive derogatory criteria to establish reasonable suspicion that the individual is a known or suspected terrorist. To meet this standard, a nominator such as the FBI must rely upon objective "articulable" intelligence or other information which, based on the totality of the circumstances and taken together with rational inferences from those facts, creates a reasonable suspicion that the individual is known or suspected to be or has been knowingly engaged in conduct constituting, in preparation of, in aid of, or related to terrorism and/or terrorist activities.[3] Mere guesses or "hunches," or the reporting of suspicious activity alone, are not

---

[3] (U) I understand that limited exceptions to the reasonable suspicion standard exist for the sole purpose of supporting special screening functions of DHS and the State Department. Individuals

SALLOUM-TSC-00288

JRDH-TSC-0003066

Case 4:19-cv-13505-MFL-RSW  ECF No. 37-25, PageID.1572  Filed 06/21/21  Page 7 of 21
Case 1:16-cv-00375-AJT-JFA  Document 299-3  Filed 03/11/19  Page 7 of 21 PageID# 9741
UNCLASSIFIED

sufficient to establish reasonable suspicion. As with the Attorney General Guidelines previously discussed, TSDB nominations must not be based solely on race, ethnicity, national origin, religious affiliation, or activities protected by the First Amendment, such as free speech, the exercise of religion, freedom of the press, freedom of peaceful assembly, and petitioning the government for redress of grievances.

11.    (U)  Watchlisting determinations are not categorical judgments based on statistical models or generic behavioral indicators. The Government has developed a watchlisting system that combines intelligence analysis with policy-based criteria for requiring additional security screening before boarding an aircraft. This system relies on informed judgments by experienced analysts and agents who evaluate watchlist nominations based on individual circumstances, taking into account the particular intelligence that distinguishes the individual under review. Agents and analysts are also guided in their decision-making by detailed analytical standards that structure their discretion and promote scrutiny and professionalism in their work.

12.    (U) Ultimately, the Government is left with the question of whether a *particular person* meets the reasonable suspicion standard for inclusion in the TSDB as a known or suspected terrorist. The Government has an obligation to detect and prevent terrorist threats and to identify the particular individuals who might carry out such actions. It is precisely because the significance of information in determining whether a terrorism threat exists is context-specific, it requires that the analysis underlying TSDB determinations be carried out by those with the

---

included in the TSDB pursuant to such exceptions are not considered "known or suspected terrorists."

SALLOUM-TSC-00289

JRDH-TSC-0003067

Case 4:19-cv-13505-MFL-RSW ECF No. 37-25, PageID.1573 Filed 06/21/21 Page 8 of 21
Case 1:16-cv-00375-AJT-JFA Document 299-3 Filed 03/11/19 Page 8 of 21 PageID# 9742
UNCLASSIFIED

training and experience to assess the available intelligence and make the complex, case-by-case analytical judgments about how various facts relate to one another.

13. (U) Analytical judgments about potential threats are the stock-in-trade of the intelligence community, and the FBI is no exception. As I explain below, TSDB nominations are closely related to, and often correspond with, the FBI's broader analytical intelligence-gathering and investigative functions to determine the type and extent of harm a person may pose.

14. (U) Analysis for the purpose of making a TSDB nomination is a critical feature of the intelligence-gathering and investigative functions of the FBI. FBI analysts and agents routinely research and analyze source intelligence on terrorist activities and terrorist threats to identify individuals or groups who pose potential threats and to make judgments about the type and degree of risk that is posed. These analysts and agents draw from a body of source material and have a variety of investigative and intelligence-gathering tools at their disposal to inform their judgment. They also make use of subject-matter experts from throughout the Intelligence Community. Drawing on years of experience and training, these experts provide invaluable insight and context for agents and analysts seeking to develop, clarify, or reconcile source material. Such intelligence expertise can fill knowledge gaps and identify certain patterns of behaviors or overarching trends that can help analysts and agents gauge the credibility and seriousness of a threat. For example, if a reported threat involves a foreign-based extremist group, an agent or analyst may consult with subject matter experts on the group or the relevant region to learn more about the group's operations, capabilities, plans, and activities.

15. (U) The TSDB's role in protecting against threats to national security is particularly important given the current threat environment. The United States continues to face

SALLOUM-TSC-00290

JRDH-TSC-0003068

Case 4:19-cv-13505-MFL-RSW  ECF No. 37-25, PageID.1574  Filed 06/21/21  Page 9 of 21
Case 1:16-cv-00375-AJT-JFA  Document 299-3  Filed 03/11/19  Page 9 of 21 PageID# 9743
UNCLASSIFIED

terrorist threats from organizations including al Qaeda in the Arabian Peninsula, al Qaeda in the Islamic Maghreb, and the Islamic State of Iraq and ash-Sham ("ISIS").[4]  These and other organizations are adept at disseminating, via the Internet, propaganda and training materials in an effort to attract individuals from all over the world to their violent cause.  ISIS, in particular, has made widespread use of the Internet and social media to spread its message.  Through their communications, groups like ISIS encourage the recipients of their message to travel for the purpose of engaging in violence or to engage in violence at home.  Too often this encouragement sees results.  Recently, Sayfullo Saipov of Paterson, New Jersey, was charged with the murder of eight people and with attempting to provide material support to ISIS in the October 31, 2017, truck attack in lower Manhattan.  On November 6, 2018, Ayaked Ullah, of Brooklyn, New York, was convicted of offenses related to the detonation and attempted detonation of a bomb in a subway station near the Port Authority Bus Terminal in New York City on December 11, 2017, on behalf of ISIS.  Despite ISIS' territorial losses in Iraq and Syria, just within the past few weeks, the Department of Justice announced a federal indictment of an Ohio man[5] and a separate federal indictment of a Texas man captured in Syria[6], both charged with attempting to provide material support to ISIS.

---

[4] (U) On January 29, 2019, the Director of National Intelligence provided a Statement for the Record to the Senate Select Committee on Intelligence, which at pp. 10-13 includes an assessment of the current terrorism threat.  The Statement for the Record is available at https://www.dni.gov/index.php/newsroom/congressional-testimonies/item/1947-statement-for-the-record-worldwide-threat-assessment-of-the-us-intelligence-community.
[5] (U) *See* https://www.justice.gov/usao-ndoh/pr/ohio-man-charged-attempting-provide-material-support-isis-attempting-commit-hate-crime

[6] (U) *See* https://www.justice.gov/opa/pr/texas-man-arrested-attempting-provide-material-support-designated-foreign-terrorist.

SALLOUM-TSC-00291

JRDH-TSC-0003069

Case 4:19-cv-13505-MFL-RSW ECF No. 37-25, PageID.1575 Filed 06/21/21 Page 10 of 21
Case 1:16-cv-00375-AJT-JFA Document 299-3 Filed 03/11/19 Page 10 of 21 PageID# 9744
UNCLASSIFIED

### (U) THE FBI'S USE AND DISSEMINATION OF TSDB DATA

16.     (U) As discussed above, the FBI's top priority is to protect the United States from terrorist attacks. In carrying out this mission, the FBI must work closely and share relevant information with its law enforcement partners at the federal, state and local levels, with other members of the Intelligence Community and with its foreign partners. The TSDB plays a critical role in the FBI's mission by enabling the FBI and its partners to share relevant information necessary to carry out their respective missions in a concerted effort to prevent terrorist attacks. Aside from protecting against threats to aircraft, the ability to access TSDB information leverages the combined resources of state, local and federal law enforcement to provide information on the activities of known or suspected terrorists whom they encounter.

17.     (U) The TSC exports a subset of TSDB data to the National Crime Information Center (NCIC), a database administered by the Criminal Justice Services Division (CJIS) of the FBI. This export from TSC to the NCIC is referred to as the Known or Suspected Terrorist (KST) File, and it is the primary means by which the FBI enables its law enforcement partners to access a subset of TSDB information. I understand that a separate declaration from the FBI's CJIS Division is being submitted concurrently herewith and provides details about access to the KST file in the NCIC. I will note that, contrary to Plaintiffs' allegations, the FBI does not share TSDB information with banks or other financial institutions or with car dealerships and is not aware of any instance of such sharing by any recipient of TSDB information.

18.     (U) Contrary to Plaintiffs' allegations, the FBI does not nominate individuals to the TSDB or its subsets in order to coerce those individuals into becoming informants (or, to use the FBI's terminology, confidential human sources (CHSs)). Nominations are made in accordance with Homeland Security Presidential Directive-6 (HSPD-6) and Congress' mandate

SALLOUM-TSC-00292

JRDH-TSC-0003070

Case 4:19-cv-13505-MFL-RSW ECF No. 37-25, PageID.1576 Filed 06/21/21 Page 11 of 21
Case 1:16-cv-00375-AJT-JFA Document 299-3 Filed 03/11/19 Page 11 of 21 PageID# 9745
UNCLASSIFIED

to promote the sharing of terrorism information in a manner consistent with national security and with applicable legal standards relating to privacy and civil liberties.[7] However, the recruitment of a CHS by an FBI Special Agent involves collecting information about and developing a more fulsome understanding of the motivations and concerns of the individual being recruited. If that individual believes that he is in the TSDB and expresses an interest in being removed from the TSDB, then he may want to discuss his perceived status with the FBI agent. The FBI agent is nonetheless unable to confirm or refute the individual's actual status. Moreover, if during the development of a relationship with a potential CHS who is in the TSDB, an FBI agent learns new, exculpatory information, the agent would have an obligation to update the TSDB nomination with that information. This may result in a change in status on the TSDB or potentially removal from the TSDB. However, FBI agents are not authorized to promise removal from the TSDB in exchange for an individual agreeing to become a CHS.

### (U) HARM TO NATIONAL SECURITY FROM DISCLOSURE OF NATIONAL SECURITY AND LAW ENFORCEMENT PRIVILEGED INFORMATION REGARDING AN INDIVIDUAL'S INCLUSION ON THE TSDB

19.    (U) The Amended Complaint in this case seeks an order requiring the Government to provide individuals in the TSDB with notice of the reasons and bases for their inclusion in the TSDB and a meaningful opportunity to contest their inclusion in the TSDB. The DHS TRIP process[8] provides the process due to U.S. persons to contest their inclusion on the TSDB, so the order being sought in this case, even if limited to U.S. persons, would be a

---

[7] (U) *See* Intelligence Reform and Terrorism Prevention Act, Pub. L. No. 108-458 § 1016 (2004) (codified at 6 U.S.C. § 485).

[8] (U) I am advised that the DHS TRIP process is discussed in detail in the declarations of TSC Deputy Director Timothy P. Groh and DHS Branch Manager Deborah O. Moore being submitted concurrently herewith.

SALLOUM-TSC-00293

JRDH-TSC-0003071

Case 4:19-cv-13505-MFL-RSW ECF No. 37-25, PageID.1577 Filed 06/21/21 Page 12 of 21
Case 1:16-cv-00375-AJT-JFA Document 299-3 Filed 03/11/19 Page 12 of 21 PageID# 9746
UNCLASSIFIED

significant expansion of that process.[9] In my informed judgment, such an expansion would have a devastating effect on the usefulness of the TSDB and a potentially calamitous effect on the national security.

20. (U) As noted, inclusion in the TSDB is often based on highly sensitive national security and law enforcement information that is properly protected from disclosure under law, including: (i) information that could tend to reveal whether an individual has been the subject of an FBI counterterrorism investigation, including the basis, status, or results of the investigation, and the content of any relevant investigative files; and (ii) information that could tend to reveal whether particular sources and methods were used by the FBI in a counterterrorism investigation or intelligence activity related to the individual in the TSDB or his associates. The notice and opportunity to contest TSDB status which Plaintiffs seek would risk or require disclosure of a great deal of this information. As explained below, disclosure of this information would provide adversaries with valuable insight into the specific ways in which the Government goes about detecting and preventing terrorist attacks, with potentially grave consequences for the national security. Moreover, the expanded process which Plaintiffs seek would discourage cooperation from sensitive sources, would discourage agencies from making otherwise appropriate nominations to the TSDB, and would divert significant intelligence and investigative resources which otherwise would be spent detecting and preventing terrorist attacks.

**(U) Subject Identification And Ongoing Investigations**

---

[9] (U) I am advised that during discovery, Plaintiffs were provided with a July 5, 2018 declaration from Deputy Director Groh which stated that as of June 2017, there were approximately 1.16 million persons included in the TSDB and that only approximately 0.4% (fewer than 5000) of those were U.S. persons. As the Selectee list is a subset of the TSDB which requires additional criteria for inclusion, the number of U.S. persons on the Selectee list is even smaller than that.

SALLOUM-TSC-00294

JRDH-TSC-0003072

Case 4:19-cv-13505-MFL-RSW ECF No. 37-25, PageID.1578 Filed 06/21/21 Page 13 of 21
Case 1:16-cv-00375-AJT-JFA Document 299-3 Filed 03/11/19 Page 13 of 21 PageID# 9747
UNCLASSIFIED

21.    (U) Requiring nominating agencies to disclose whether or not an individual is in the TSDB or the reasons for including an individual in the TSDB, beyond the disclosure contemplated by the DHS TRIP procedures, could jeopardize the integrity and secrecy of ongoing counterterrorism investigative or intelligence activities. In many cases, such disclosures may contain information that could tend to confirm or deny whether a particular individual is the subject of an FBI investigation. For example, the existence of an FBI record about an individual could alert the individual to the Government's investigative or intelligence interest in him and cause him to take counter-measures to evade detection. The risk of harm to national security would be amplified if such disclosures were required to include the *contents* of an FBI counterterrorism or counterintelligence file, thereby revealing to the individual what the FBI knows about his plans. This might include information that could tend to reveal the reason for initiating the investigation, the status of the investigation, or other sensitive information that the investigation had brought to light.

22.    (U) Disclosures of this nature would be particularly damaging where FBI subjects or former subjects have associates whom the FBI may still be investigating for potential ties to terrorist activity. Information regarding one subject may reflect law enforcement interest in other subjects, with the result that releasing such information could reasonably be expected to alert the other subjects that they are of interest to law enforcement. This, in turn, could cause the other subjects to flee, destroy evidence, or take steps to alter their conduct or communications so as to avoid detection of future activities. In these circumstances, law enforcement and intelligence officers would be significantly hindered in gathering further information on the activities of the other subjects or in determining their whereabouts. In addition, an individual's knowledge that he is under investigation might enable him to anticipate law enforcement actions

SALLOUM-TSC-00295

JRDH-TSC-0003073

Case 4:19-cv-13505-MFL-RSW  ECF No. 37-25, PageID.1579  Filed 06/21/21  Page 14 of 21
Case 1:16-cv-00375-AJT-JFA  Document 299-3  Filed 03/11/19  Page 14 of 21 PageID# 9748
UNCLASSIFIED

by, for example, conducting counter-surveillance, which could place federal agents at higher risk of harm.

23.    (U) Furthermore, if, in addition to the disclosures contemplated by the DHS TRIP procedures, the government were required to disclose TSDB status to individuals not in the TSDB, this would effectively confirm that any individual not eligible for such a disclosure is, in fact, in the TSDB.  Confirmation that an individual is not in the TSDB would be of considerable value to terrorist groups to confirm which individuals are not the likely subject of ongoing investigations and who are more likely to evade detection and escape scrutiny.  With respect to people who believe they are in the TSDB because they are required to undergo additional screening, because there are many reasons an individual may be required to undergo additional screening that have nothing to do with TSDB status, the ambiguity left open by the absence of official confirmation denies important operational information to terrorist adversaries.

**(U)  Sources and Methods**

24.    (U) The disclosure of national security information relating to the status of an individual with respect to the TSDB beyond that allowed under the DHS TRIP process could also reveal sensitive, classified, or previously undisclosed FBI sources and methods used in counterterrorism investigations and intelligence activities, as well as the type of information derived from such techniques.[10]

25.    (U) In particular, such disclosures could reveal the specific investigative methods used with respect to a certain individual target, such as court-ordered searches or surveillance,

---

[10] (U)  Again, nothing in the following discussion is meant to suggest that any of the plaintiffs are actually in the TSDB or that these types of sources or methods were used with regard to the determination to include any plaintiff in the TSDB.

SALLOUM-TSC-00296

JRDH-TSC-0003074

Case 4:19-cv-13505-MFL-RSW ECF No. 37-25, PageID.1580 Filed 06/21/21 Page 15 of 21
Case 1:16-cv-00375-AJT-JFA Document 299-3 Filed 03/11/19 Page 15 of 21 PageID# 9749
UNCLASSIFIED

confidential human sources, undercover operations, or various forms of national security process. This, in turn, could further reveal the reasons for initiating an investigation, the steps taken in an investigation, the reasons certain methods or sources were used, the status of the use of such methods or sources, and any results derived from those techniques. Detecting and preventing terrorist attacks is the paramount objective of the FBI, and the disclosure of sensitive and classified techniques and methods would provide a roadmap to adversaries as to how the FBI goes about this vital task, allowing them to engage in countermeasures to escape detection and frustrate the FBI's ongoing counterterrorism mission.

26. (U) Although the FBI's general use of certain methods, such as physical surveillance, are known to the public, the release of information derived from such a method in a particular matter could, in some circumstances, risk the success of investigations. For example, where surveillance is being conducted of a group of associates, providing one of the targets with information sufficient to identify where and when the surveillance took place, and even which agency was responsible for the surveillance, could lead a single target to warn his associates. That, in turn, would eliminate the effectiveness of the continued use of the surveillance with regard to the other associates.

27. (U) In addition to traditional surveillance, the Government has a compelling interest in protecting the secrecy of national security process, such as National Security Letters ("NSLs"), and Foreign Intelligence Surveillance Act ("FISA") surveillance. When used, NSLs can be important in the early phases of national security investigations, by providing subscriber telephone numbers and other non-content information, which can assist investigators in developing leads to determine, among other things, investigative subjects' true identities, actions, intent, associates, and financial transactions. To the extent that the reasons for inclusion in the

SALLOUM-TSC-00297

JRDH-TSC-0003075

Case 4:19-cv-13505-MFL-RSW ECF No. 37-25, PageID.1581 Filed 06/21/21 Page 16 of 21
Case 1:16-cv-00375-AJT-JFA Document 299-3 Filed 03/11/19 Page 16 of 21 PageID# 9750
UNCLASSIFIED

TSDB are based, even in part, on information obtained through NSLs or FISA court orders or court warrants, disclosure of that fact, or of the information derived from those methods, would pose serious risks, including jeopardizing further surveillance activity and putting the success of the entire investigation or intelligence operation at risk. Moreover, revealing the use of an NSL or FISA order or warrant with regard to a particular subject could tip off that subject's associates that the Government may be aware of communication between the subject and his associates.

28.    (U) The disclosure of information concerning the basis for an individual's placement in the TSDB or on the No Fly or Selectee List could also reveal the identity of CHSs, where such sources are used as part of an investigation. At the very least, such a disclosure could reveal information that a subject or his associates could use to determine that a CHS is being used and to discover the identity of that CHS. The risks posed by the discovery of a CHS's identity are twofold. First, when a target identifies a CHS, the CHS's usefulness to the ongoing investigation is greatly diminished, if not eliminated altogether. More importantly, however, the CHS's safety, and possibly the safety of his family, is put at risk. Where the disclosure of information regarding one subject leads to additional subjects learning that they too are of interest to the FBI, such disclosure could enable subjects to ascertain the identities of additional confidential informants or other sources of intelligence, putting those sources at risk as well.

29.    (U) In addition, where foreign law enforcement and intelligence information has been used in an investigation, revealing such information could compromise the confidentiality agreements with foreign government(s) and thereby reasonably could be expected to strain relations between the United States and the foreign government(s) and disrupt the free flow of vital information to United States intelligence and law enforcement agencies. Information about

SALLOUM-TSC-00298

JRDH-TSC-0003076

Case 4:19-cv-13505-MFL-RSW   ECF No. 37-25, PageID.1582   Filed 06/21/21   Page 17 of 21
Case 1:16-cv-00375-AJT-JFA   Document 299-3   Filed 03/11/19   Page 17 of 21 PageID# 9751
UNCLASSIFIED

the FBI's relationships with certain foreign government entities is subject to constraints on disclosure. Some foreign government information is classified, while other foreign government information is subject to the law-enforcement privilege. The FBI's ability to carry out its responsibilities to conduct counterterrorism and counterintelligence investigations often depends on the cooperation of certain foreign government officials, foreign intelligence services, or foreign security services. Maintaining the confidentiality of foreign government information is critical to the maintenance of ongoing productive cooperation with friendly foreign nations in the field of counterterrorism. The free exchange of information among United States intelligence and law enforcement services and their foreign counterparts is predicated upon the understanding that, not only must the information exchanged be kept in confidence, but that, generally, the relationships themselves likewise be kept confidential. Indeed, in many instances, information received from a foreign government remains the property of that government and is provided under the express caveat that it may not be released outside the FBI without that government's express permission.

### (U) Law Enforcement Privilege

30.    (U) In addition to reliance on national security information, inclusion in the TSDB is sometimes based on sensitive law enforcement information, including information that pertains to law enforcement techniques and procedures, information that would undermine the confidentiality of sources, information that would endanger witness and law enforcement personnel, information that would undermine the privacy of individuals involved in the investigation, or information that would seriously impair the ability of a law enforcement agency to conduct future investigations.

SALLOUM-TSC-00299

JRDH-TSC-0003077

Case 4:19-cv-13505-MFL-RSW ECF No. 37-25, PageID.1583 Filed 06/21/21 Page 18 of 21
Case 1:16-cv-00375-AJT-JFA Document 299-3 Filed 03/11/19 Page 18 of 21 PageID# 9752
UNCLASSIFIED

31.     (U) Revealing additional information, beyond the types already contemplated in the DHS TRIP procedures, would risk the revelation of law enforcement privileged information including, among other things, information about individuals contained in FBI files, the identities of FBI agents and TSC personnel, and policies and procedures relating to the TSDB watchlisting process. In particular, the Watchlisting Guidance details the current policies and procedures governing the process for identifying and placing individuals on terrorism screening watchlists. The guidance is disseminated solely within the watchlisting community. Official disclosure or confirmation of the contents of the guidance and related materials would provide certainty to terrorist adversaries as to how the watchlisting process works and assist those adversaries in their effort to circumvent that process.

### (U)  ADDITIONAL HARMS TO NATIONAL SECURITY FROM FURTHER DISCLOSURES

32.     (U)  In addition to the concerns described above, if national security and law enforcement privileged information had to be disclosed to all persons in the TSDB in order to give them notice and an opportunity to contest their inclusion, it would have an extreme chilling effect on the use of such information in the nomination process, which in turn would severely undermine the effectiveness of the TSDB and its subset lists. If nominating agencies had reason to believe that national security information used to support their TSDB nominations would be disclosed, there would be a strong reluctance to share such information in the nomination process. When that happens, there will be gaps in information sharing through which terrorists could gain entry to the United States or to U.S. aircraft. Thus, the TSDB would become self-defeating if, in order to protect against terrorist threats to aviation and national security, the Government were required to disclose classified national security information or law

SALLOUM-TSC-00300

JRDH-TSC-0003078

Case 4:19-cv-13505-MFL-RSW ECF No. 37-25, PageID.1584 Filed 06/21/21 Page 19 of 21
Case 1:16-cv-00375-AJT-JFA Document 299-3 Filed 03/11/19 Page 19 of 21 PageID# 9753
UNCLASSIFIED

enforcement information about a particular known or suspected terrorist included in the TSDB. In my judgment, nominating agencies such as the FBI should not be forced to choose between, on the one hand, disclosing information that could reasonably be expected to compromise an investigation, expose a source, or reveal sensitive surveillance techniques, and, on the other, withholding information that could be used to identify and prevent a terrorist attack.

33. (U) Furthermore, if the Government were required to provide notice to individuals that they are in the TSDB and to turn over evidence supporting the TSDB determination, such a process would place highly sensitive national security information directly in the hands of terrorist organizations and other adversaries, who would have every incentive to manipulate the procedures in order to discover whether they or their members are subject to investigation or intelligence operations, what sources and methods the Government employs to obtain information, or what type of intelligence information is sufficient to trigger an investigation in the first place.

34. (U) Moreover, if the relief Plaintiffs seek would include an adversarial hearing that calls for the cross-examination of Government witnesses, that could expose the identity of any confidential sources at issue in particular TSDB determinations, which would not only end their cooperation but endanger their lives and jeopardize the success of the investigation. Similarly, foreign governments likely would no longer assist in providing information relevant to TSDB nominations. An adversarial hearing would also require the devotion of significant intelligence and investigative resources, with the burden of preparation placed on some of the very officials charged with detecting and preventing terrorist attacks and undertaking counterterrorism investigations. This would provide further disincentive for agents to participate in the nomination process.

SALLOUM-TSC-00301

JRDH-TSC-0003079

UNCLASSIFIED

35.    (U)  Likewise, any required release of national security information would present significant risks to FBI investigative or intelligence activities and would create a severe disincentive to use such information to nominate individuals to the TSDB.  It must be stressed that TSDB determinations are made in the midst of ongoing investigative or intelligence activities, not during a post-investigation criminal proceeding, and that these activities are directed at the most significant of interests – detecting and preventing terrorist attacks.  In these circumstances, the need to protect investigative or intelligence information and the sources and methods used to obtain it is at its zenith.  No matter what kind of protective procedures might be adopted, release of national security to private counsel increases the risk of either an intentional or inadvertent unauthorized disclosure and thus risks compromising an ongoing counterterrorism activity.  Thus, in my informed judgment, disclosure of information to counsel for suspected terrorists in the TSDB raises significant risks of harm to national security.

36.    (U)  The current DHS TRIP process already presents some risk of harm to the national security by requiring the disclosure of No Fly status to certain U.S. persons and, in appropriate cases, an unclassified summary of reasons for their inclusion on that list.  In my informed judgment, any extension of the relief available under DHS TRIP to individuals who are not U.S. persons on the No Fly List, or the imposition of any other procedures requiring the Government to disclose the status or reasons for inclusion of an individual on the Selectee List or the TSDB would have a devastating effect on the usefulness of the TSDB and a potentially calamitous effect on the national security.

### (U)  CONCLUSION

37.    (U)  For the reasons stated above, I respectfully urge the court to grant the motion for summary judgment and deny the relief sought by Plaintiffs.

UNCLASSIFIED

SALLOUM-TSC-00302

JRDH-TSC-0003080

UNCLASSIFIED

I declare under penalty of perjury that the foregoing is true and correct.

Executed this ___8___ day of March, 2019.

Michael J. Orlando
Acting Assistant Director
Counterterrorism Division
Federal Bureau of Investigation
Washington, D.C.

UNCLASSIFIED

SALLOUM-TSC-00303

JRDH-TSC-0003081