UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

**SAMUEL SALLOUM**,

*Plaintiff,*

*vs.*

**CHARLES H. KABLE, IV**, *et al.*,

*Defendants.*

Case No.: 4:19-cv-13505
Hon.: Judge Matthew F. Leitman

| | |
|---|---|
| AYAD LAW, PLLC<br>Nabih H. Ayad (P59518)<br>*Attorney for Plaintiff*<br>645 Griswold St., Ste 2202<br>Detroit, MI 48226<br>P: 313.983.4600<br>F: 313.983.4665<br>ayadlaw@hotmail.com<br><br>ANTHONY J. COPPOLINO<br>*Attorney for Defendants*<br>Deputy Director, Federal Programs Branch | Joseph H. Hunt<br>*Attorney for Defendants*<br>Assistant Attorney General, Civil Division<br><br>CHRISTOPHER HEALY<br>SOPHIE KAISER<br>*Trial Attorneys for Defendants*<br>United States Department of Justice<br>Civil Division, Federal Programs Branch<br>1100 L Street, NW, Washington, DC 20005<br>P: 202.307.2092<br>F: 202.616.8470<br>Sophie.b.kaiser@usdoj.gov |

<u>**PLAINTIFF'S RESPONSE TO DEFENDANTS' MOTION FOR LEAVE TO FILE EXHIBITS *IN CAMERA* AND *EX PARTE***</u>

Plaintiff states the following in opposition of Defendants' motion:

### INTRODUCTION

Plaintiff Captain Samuel Salloum is a United States citizen of Lebanese decent, currently residing in Lebanon. Defendants are the heads of several United

States government agencies responsible for depriving Plaintiff of his constitutional rights under the pretext of national security by, among other things, wrongfully placing Plaintiff on their Terrorist Screening Database ("TSDB").[1] As a result of governmental action against him, Plaintiff's constitutional rights are being violated and, as a consequence of the feigned secrecy with which the government is taking unconstitutional action against Plaintiff, he is being unconstitutionally left without recourse to protect his rights, should this honorable Court not compel Defendants to produce responsive materials to his one simple interrogatory and one simple request for production of documents.

## RELEVANT BACKGROUND

The Terrorist Screening Database ("TSDB") is the central terrorist watchlist compiled and maintained by the FBI's Terrorist Screening Center ("TSC") and disseminated to many agencies of United States and foreign governments, State and local law enforcement, and private corporations. Approximately 1600 individuals are "nominated" to be on the TSDB every single day and, as of June 2016, the list was estimated to contain the records of over 1,877,133 individuals. The TSDB is compiled from two major sources, the Terrorist Identities Datamart Environment, a list maintained by the National Counterterrorism Center ("NCTC"), supplies

---

[1] Plaintiff has suffered an altered legal status (his name being placed on the Watch List), has been defamed and stigmatized by the government (for all intents and purposes, Defendants are telling every public airport employee Plaintiff encounters that Plaintiff is a 'known or suspected' monster), and has suffered severe injuries because of it (loss of many business opportunities and inability to live in the United States with his wife).

2 | Page

identities of suspected international terrorists and the Federal Bureau of Investigation ("FBI") supplies identities of suspected domestic terrorists.

The TSDB is then used by more than 60 foreign governments, more than 18,000 state, local, county, city, university and college, tribal, and federal law enforcement agencies and approximately 533 private entities to create their own lists and databases which they use to screen and often deny travelers or applicants for visas, permits, licenses, financial transactions, and/or employment positions, *etc*.

**The standards used for placing individuals on the list are exceptionally low and it is only required that the TSC find a "reasonable suspicion," not that one has or is about to commit a crime, but that one may have or may intend to engage in the loosely defined "terrorism-related activity."**

The TSDB is demonstrably ineffective, audits have shown that it is highly inaccurate, and has been broadly criticized in the media and the federal courts. One never receives notice that they have been nominated for placement on the TSDB nor notice that they have actually been placed on the TSDB. Likewise, one cannot learn, ever, from an official source whether they are or are not on the list.

An individual's inclusion in the TSDB has permanent, far-reaching, and life-altering negative consequences, many of which are harms to their constitutionally protected rights, such as the right to travel, as is Plaintiff's situation.

Owing to Plaintiff's inclusion on the TSDB, he has and continues to suffer harassment at being asked the same questions (of which the answers do not change)

over and over again every time he flies. He is delayed for hours on end to the point of missing flights and meetings. He is subject to illegal searches and seizures. He, as a United States citizen, is robbed of immigration benefits that other US citizens are not, as other governments will not cooperate in procedures required to gain lawful US residency for his Wife, the mother of his 20 and 13 year-old children. He has been subjected to much more dangerous interrogations by foreign governments (here, Jordanian authorities) owing to his inclusion on the list.

This honorable Court has already ruled that Plaintiff's pled injuries that, if unjustified by Defendants, will equate to violations of Plaintiff's constitutional rights.[2] "Salloum has plausibly alleged a substantial interference with his right to travel. And that right – at least with respect to domestic travel – has long been recognized as fundamental." ECF No. 23, PageID 1083.

> Salloum has plausibly alleged that the repeated seizures of him personally [as well as the seizing and downloading of his electronic devices] – which, again, involved identical, probing interrogations (at times on consecutive days) – were not routine, were highly intrusive, and were not sufficiently justified under the circumstances.
>
> ECF No. 23, PageID 1098 (brackets added, parenthesis in original).

---

[2] Specifically, this Court's order on Defendants' motion to dismiss Plaintiff's claims ruled: "The motion is DENIED with respect to: (1) Salloum's procedural due process claim arising out the denial of his right to travel, (2) Salloum's substantive due process claim arising out of the denial of his right to travel, (3) Salloum's Fourth Amendment claim arising out of the seizures of his computer and phone; and (4) Salloum's Fourth Amendment claim arising out of his detention at airports." ECF No. 23, PageID 1110.

Further, this Court has ruled that, owing to Plaintiff's well-pled allegations, the facts of Defendants' depravations must be developed in order for a determination as to their lawfulness can be made.

> Whether the alleged extensive downloading of data from Salloum's devices may ultimately be upheld as a lawful administrative search and/or seizure **will depend upon the development of a factual record during discovery** concerning, among other things, the degree to which the downloading of data actually protects the public's interest in air travel and whether the downloading of that data is reasonably necessary to achieve that goal.
>
> ECF No. 23, PageID 1094 (emphasis added).
>
> **The Court may ultimately conclude – after discovery and/or following a trial** – that the government's "internal processes may provide sufficient protection to withstand scrutiny," but "the Court cannot make that determination as a matter of law" as this early stage of the proceedings and in the face of Salloum's well-pleaded allegations.
>
> ECF No. 23, PageID 1078-79 (emphasis added).

In lieu of traditional discovery, Defendants suggested that they be allowed to submit documents to Plaintiff and the Court that pertained to the following issues:

> The Parties agree that Defendants will compile an administrative record comprised of: (1) any factual materials Defendants considered in determining—*arguendo*—that Plaintiff should be placed in the TSDB (if applicable); (2) factual materials considered in connection with any searches and seizures of Plaintiffs' electronic devices or his person by Defendants; and (3) materials considered with respect to TSDB placement procedures.
>
> Joint Discovery Plan Order, ECF No. 29 PageID 1159.

The discovery order goes on to hold that Defendants file certain portions of the administrative record solely with the Court, if they feel those materials are too sensitive to be shared with Plaintiff or his counsel. The order also called on the parties to attempt to resolve any discovery disputes themselves (which they have, see **Exhibit A, August 12, 2021 email between parties' counsel**). In the communications between parties, Plaintiff made clear that, before he could be satisfied with the administrative record, he would require disclosure of what information has caused Plaintiff to be placed on the TSDB, what caused Defendants to rely on that information, what was its source, who or what organization conducted Plaintiff's biannual review, and what information did they rely on. *Id*.

Accordingly, Plaintiff is independently entitled, by both the Defendants stipulations regarding discovery and this Court's prior orders, to discovery in this case that allows for a fair determination of whether Defendants' wrongful acts amount to the level of constitutional violations. Yet that discovery has not been forthcoming. Instead, Defendants have submitted a document dump in an attempt to bury Plaintiff and distract this Court. Tellingly, only two "parts" of Defendants' 73 part production pertain in any way to Plaintiff. Those two, parts 54 and 55 (Plaintiff's DHS TRIP records (redacted), ECF No. 37-61, PageID 2584-2648 and Plaintiffs TECS records, ECF No. 37-62, PageID 2649-2752, respectively).

The TRIP records provide almost exclusively documentation which Plaintiff already had, as he is the one who originally submitted it to Defendants as part of his

TRIP administrative application to be removed from the TSDB. Of note, however, is the fact that it does highlight the inaccuracy of the Defendants' record-keeping, where it shows that Plaintiff's attorney is unknown [see PageID 2587 under "attorney info"], despite Defendants knowing the identity of Plaintiff's attorney for months prior to the production of documents.

The only other thing that Defendants' disclose serve to do is completely corroborate Plaintiff's allegations. For instance, Plaintiff's willingness to cooperate with Defendants is corroborated by the Defendants notes that Plaintiff has proved them with the passwords to his electronic devices when they seize them. See PageID 2665 ("Password provided: Y"). That he attempted to open up an office here in Michigan. "He stated that he is coming for a 10 day business trip to ensure that the office that he is opening up here in Michigan… is ready [to] open." PageID 2678. That he has had to stop traveling with a cell phone, tablet, or computer because Defendants' downloading of such devices takes an excessive amount of time. "Mr. SAL'UOUM only carried a carry-on bag with him, and stated he travels light to make the inspection easier." PageID 2 "Mr. SALLOUM did not have a carry—on bag, checked baggage, or a telephone with him. He stated he thought it would expedite his time with CBP if he traveled without these items and said he had personal belongings and a phone at his home in Dearborn." PageID 2721. That the questioning of Plaintiff is extraordinarily reparative. See ECF No. 37-61 and 37-62, generally. They watch his devices for hours: "[Plaintiff's electronic ]Media was

7 | P a g e

viewed from 1115hrs — 1325hrs" PageID 2665. And that there are "0" "activities" open for Plaintiff. PageID 2624-5. Potentially meaning that no investigation is taking place regarding Plaintiff.

The only other item produced that could possibly be responsive to the discovery questions regarding Plaintiff are in the declarations submitted by Defendants. Each declaration contains one, short, completely redacted paragraph that, even if assumed to only relate information about Plaintiff, is far too short to provide the fact pattern needed to justify Plaintiff's placement on the TSDB. See PageID 1191-1262.

## LAW AND ARGUMENT

**I.   Defendants are not entitled to hide behind the 'law enforcement' privilege, because Plaintiff is already being punished by the government, and therefore has a right to know the evidence against him.**

Plaintiff brings this action because there is no legitimate reason to classify him as a "known or suspected terrorist" as Defendants have done by placing him on their watch list; because even had Plaintiff done something suspect, the government's repetitive and redundant searches and seizures of him and his property are unreasonable; and because Plaintiff has a fundamental right to the due process of formal charges and proceedings against him where he may defend himself, or to have the government cease harassing and injuring him and his family.

AYAD LAW, P.L.L.C.
645 Griswold St., Ste. 2202
DETROIT, MICHIGAN 48226
P: (313) 983-4600 | F: (313) 983-4665

Plaintiff brought their motion to compel Defendant's discovery disclosures precisely because Plaintiff is certain that the government's suspicions regarding him are in error, and he wishes to exercise his due process rights to be able to address the government's supposed 'evidence' against him. Yet, if Defendants' motion to file in camera is granted, Plaintiff will be, again, robbed of that right. For all anyone knows, Defendants' supposed 'evidence' against Plaintiff may be easily discredited by Plaintiff, with hard counter-evidence. Plaintiff should have the opportunity to do just that. Yet, if Defendants' motion for leave to file in camera is granted, there is a high probability that it will, essentially, litigate this entire case in without Plaintiff's involvement. That is because it is certain that Defendants would present biased information to the Court *in camera*.

To be clear, Defendants have claimed the law enforcement privilege and not the state secrets privilege. The majority of the cases cited by Defendants do not discuss either the law enforcement or state secrets privileges. (see *United States v Zolin*, 491 US 554; 109 S Ct 2619; 105 L Ed 2d 469 (1989) [Discussing only "privileged attorney-client communications."] *Convertino v US Dept of Justice*, 795 F3d 587 (CA 6, 2015) [Discussing only " Fifth Amendment privilege against self-incrimination."] *In re Grand Jury Investigation No 83-2-35*, 723 F2d 447 (CA 6, 1983) [Discussing only "attorney-client privilege."] *Am Civil Liberties Union v Holder*, 673 F3d 245 (CA 4, 2011) [Not mentioning the word 'privilege' once.] *In re Grand Jury Subpoenas Dated March 19, 2002 & August 2, 2002*, 318 F3d 379, 383

AYAD LAW, P.L.L.C.
645 Griswold St., Ste. 2202
DETROIT, MICHIGAN 48226
P: (313) 983-4600 | F: (313) 983-4665

(CA 2, 2003) [Discussing only, "attorney work product" and "attorney-client privilege."] *Holy Land Found for Relief & Dev v Ashcroft*, 333 F3d 156, 164; 357 US App DC 35, 43 (2003) [Discussing only the irrelevant "I[nternational] E[conomic] E[mergency] P[owers] A[ct which] expressly authorizes *ex parte* and *in camera* review… in "any judicial review of a determination made under this section [that] was based on classified information." 50 U.S.C. § 1702(c).")

**The few cases that Defendants cite that do discuss the privilege they claim, do so in a criminal setting**. "The motion is brought pursuant to Fed.R.Crim.P. 16(d)(1) and § 4 of the Classified Information Procedures Act ("CIPA"), 18 U.S.C.A.App. 3 § 4." *United States v Hamama*, No. 08-20314, 2010 WL 330375, at *2 (ED Mich, January 21, 2010). "In the area of national security and the government's privilege to protect classified information from public disclosure, we look to CIPA for appropriate procedures." *United States v Abu Ali*, 528 F3d 210, 245 (CA 4, 2008). *United States v. Taylor*, No. 3:14-00015, 2015 WL 9274934, at *2 (M.D. Tenn. Dec. 18, 2015). *Etc.*[3]

This is highly significant for two reasons. First, because Defendants are picking and choosing case law to get the best of both the civil and criminal worlds. Second, because, Plaintiff is suing because he is already suffering a punishment

---

[3] "[P]urely domestic investigations with no international connection do not involve state secrets…" Fazaga v Fed Bureau of Investigation, 965 F3d 1015, 1041 (CA 9, 2020), cert gtd 141 S Ct 2720; 210 L Ed 2d 882 (2021), and rev'd and remanded No. 20-828, 2022 WL 626693 (US, March 4, 2022)

10 | P a g e

dolled out by the government in that he cannot fly without being unreasonably harassed, seized, and searched but Plaintiff has not been convicted of any crime.

The entire gist of this litigation is Defendants' utilization of civil precedence and procedure, while outside of court treating Plaintiff like a convicted criminal. As Plaintiff has claims for unlawful search and seizure and violation of fundamental due process which have already survived Defendants' motion for summary disposition, that is not an unreasonable statement. If Defendants claim the law enforcement privilege, then they are subject to its many limitations.

In another case cited by Defendants, it is stated that "the information sought by Plaintiff's motion is protected by the law enforcement privilege." Def. Brf., ECF No. 52, PageID 3301. "To invoke the privilege, however, it must be established that the materials at issue relate to a *bona fide*, ongoing, law enforcement investigation." *Jabara v Kelley*, 75 FRD 475, 493 (ED Mich, 1977). And "while pendency of a criminal investigation is a reason for denying a discovery of investigation reports, this privilege would not apply indefinitely…" *Id.* "**A further limitation on the applicability of the privilege arises from the fundamental requirements of fairness. Where the disclosure… is relevant and helpful to the defense of an accused, or is essential to a fair determination of a cause, the privilege must give way.**" *Roviaro v United States*, 353 US 53, 60–61; 77 S Ct 623, 628; 1 L Ed 2d 639 (1957) (emphasis added). See also *United States v Hamama*, No. 08-20314, 2010 WL 330375, at *3 (ED Mich, January 21, 2010), cited by Defendants.

AYAD LAW, P.L.L.C.
645 Griswold St., Ste. 2202
DETROIT, MICHIGAN 48226
P: (313) 983-4600 | F: (313) 983-4665

11 | P a g e

Accordingly, because fundamental fairness requires that Plaintiff know what he is being accused of and punished for, this Court must stand for Plaintiff's rights and protect them. This is a Court for all peoples, where Plaintiff and the government are supposed to stand on even ground. That will not be the case if the government is allowed to "mak[e] their strongest possible case in opposition to [Plaintiff's] motion" to compel, without Plaintiff having an opportunity to respond in kind. Def. Brf. ECF No.52, PageID 3303.

## RELIEF REQUESTED

WHEREFORE, Plaintiff humbly prays that this Honorable Court enter an order in fully DENYING Defendants' motion.

Respectfully submitted,

*/s/Nabih H. Ayad*
AYAD LAW, PLLC
645 Griswold St., Ste. 2202
Detroit, MI 48226
P: 313.983.5600
F: 313.983.5660
ayadlaw@hotmail.com

Dated: March 4, 2022

## CERTIFICATE OF SERVICE

I hereby certify that on this date I filed with the Clerk of Courts via the ECF system the foregoing papers, along with any attachments, and served copies of the same via First Class US Mail and electronic mail on the following parties:

Joseph H. Hunt
*Attorney for Defendants*
Assistant Attorney General, Civil Division

ANTHONY J. COPPOLINO
*Attorney for Defendants*
Deputy Director, Federal Programs Branch

CHRISTOPHER HEALY
SOPHIE KAISER
*Trial Attorneys for Defendants*
United States Department of Justice Civil Division, Federal Programs Branch
1100 L Street, NW, Washington, DC 20005
P: 202.307.2092
F: 202.616.8470
Sophie.b.kaiser@usdoj.gov

                                                    Respectfully submitted,

                                                    */s/Nabih H. Ayad*
                                                    AYAD LAW, PLLC
                                                    645 Griswold St., Ste. 2202
                                                    Detroit, MI 48226
                                                    P: 313.983.5600
                                                    F: 313.983.5660
Dated: March 4, 2022                        ayadlaw@hotmail.com

AYAD LAW, P.L.L.C.
645 Griswold St., Ste. 2202
DETROIT, MICHIGAN 48226
P: (313) 983-4600 | F: (313) 983-4665