UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

SAMUEL SALLOUM,

      Plaintiff,                                   Case No. 19-cv-13505
                                                   Hon. Matthew F. Leitman

v.

CHARLES KABLE IV, *et al.*,

      Defendants.

_____/

## <u>ORDER GRANTING IN PART AND DENYING IN PART<br>PLAINTIFF'S MOTION TO COMPEL (ECF No. 46)</u>

In this action, Plaintiff Samuel Salloum alleges that Defendants – officials with certain federal law enforcement and national security agencies – placed him in the Terrorist Screening Database (the "TSDB"), and that his placement in the TSDB violates his constitutional rights.  Now before the Court is Salloum's motion to compel Defendants to produce documents and information concerning his alleged placement in the TSDB, over which Defendants have asserted the law enforcement privilege. (*See* Mot., ECF No. 46.)  As an alternative request for relief, Salloum asks the Court to conduct an *in camera* review of the materials in question to determine whether the materials are, in fact, covered by the privilege.  Defendants do not oppose Salloum's request for an *in camera* review, but they urge the Court to conclude that the materials sought by Salloum are covered by the law enforcement privilege and should not be produced.

The Court has completed three levels of review in connection with Salloum's motion.  First, the Court has reviewed Salloum's requests for production and has concluded that those requests, by their very nature, seek materials that are necessarily covered by the law enforcement privilege.  Second (and at Salloum's request), the Court has conducted an *in camera* review of the documents that are responsive to his requests, and the Court has confirmed that those documents are, in fact, covered by the privilege.  Finally, the Court has weighed Salloum's interest in disclosure of the privileged materials against the Defendants' interest in non-disclosure and has determined that Defendants' interest outweighs Salloum's interest.  Salloum is therefore not entitled to production of the privileged materials.  For these reasons, Salloum's motion is **GRANTED** to the extent it seeks an *in camera* review and **DENIED** in all other respects.

## I

The Court has described the factual and procedural background underlying this action in detail in its prior orders (1) granting in part and denying in part Defendants' motion to dismiss (*see* Op. & Order, ECF No. 23) and (2) granting Defendants' motion for leave to file *ex parte* and *in camera* materials (*see* Order, ECF No. 59).  The Court incorporates that background into this Order and sets forth below only the facts that are essential to the disposition of Salloum's current motion.

**A**

Salloum – a United States citizen and businessman residing in Lebanon – alleges that he is routinely and extensively detained and questioned when he flies into and within the United States. (*See* First Am. Compl., ECF No. 10.)  He further contends that during these detentions, his electronic devices are seized and their contents are downloaded. (*See id.*)  Salloum asserts that because he is treated in this manner, Defendants must have placed him in the TSDB.[1] (*See id.*)  Salloum claims that his placement in the TSDB is erroneous and that his placement violates his Fourth and Fifth Amendment rights. (*See id.*)

Defendants filed a motion to dismiss on April 14, 2020. (*See* Mot. to Dismiss, ECF No. 12.)  On December 18, 2020, the Court granted the motion in part and denied it in part. (*See* Order, ECF No. 23.)   In light of the Court's ruling, the following claims by Salloum remain in this action: (1) a procedural due process claim related to interference with his right to travel; (2) a substantive due process claim related to interference with his right to travel; (3) a Fourth Amendment claim arising out of the seizures of his electronic devices; and (4) a Fourth Amendment claim arising out of his detention at airports. (*See id.*)

---

[1] The TSDB is "the U.S. government's consolidated terrorist watchlist." *Mokdad v. Lynch*, 804 F.3d 807, 810 (6th Cir. 2015).

**B**

After the Court resolved Defendants' motion to dismiss, the parties proceeded to discovery on Salloum's remaining claims.  Following an April 7, 2021, status conference with the parties concerning discovery, the Court issued an Order (the "Discovery Order") requiring Defendants to compile and produce to Salloum an administrative record comprised of the following materials:

> (1) any factual materials Defendants considered in determining—arguendo—that Plaintiff Samuel Salloum should be placed in the Terrorist Screening Database (the "TSDB") (if applicable); (2) factual materials considered in connection with any search es and seizures of Salloum's electronic devices or his person by Defendants; and (3) materials considered with respect to TSDB placement procedures.

(Order on Status Conf., ECF No. 31, PageID.1165.)  The Discovery Order further provided that if any portion of this administrative record contained classified or privileged materials, Defendants could submit those materials to the Court "*ex parte and in camera*," rather than to Salloum. (*Id.*, PageID.1165-1166.)   Finally, the Discovery Order stated that "[n]othing in this order shall be read as foreclosing either party from seeking supplementation of the administrative record and/or requesting additional discovery after the administrative record is compiled and presented to Salloum." (*Id.*, PageID.1166.)

In accordance with the Discovery Order, on June 21, 2021, Defendants filed a portion of the administrative record on the public docket (the "Public Record"),

(*see* Admin. Record, ECF No. 37), and they filed a notice indicating that other

portions of the administrative record would be filed with the Court for *ex parte* and

*in camera* review (the "*Ex Parte* Record"). (*See* Notice, ECF No. 38.)  The Public

Record produced to Salloum contained some redacted documents.  The *Ex Parte*

Record was entirely unavailable for review by Salloum and/or his counsel.

## C

On October 1, 2021, the parties filed a Joint Status Report indicating that

Salloum had objected to Defendants' filing of certain portions of the administrative

record for *ex parte* and *in camera* review. (*See* Joint Status Report, ECF No. 40.)

After an October 13, 2021, status conference, the Court directed Salloum to explain

his objections in a motion to compel production. (*See* Docket Entry for October 13,

2021.)

## D

Salloum thereafter filed the present motion to compel. (*See* Mot., ECF No.

46.)  In this motion, Salloum asks the Court to compel the Defendants to produce

much of the *Ex Parte* Record to him.  More specifically, he seeks entry of an order

awarding him the following relief:

> b) Requiring Defendants to produce unredacted versions
> of the administrative public record already produced to
> Plaintiff and unredacted versions of any other materials
> responsive to the issues "(1) any factual materials
> Defendants considered in determining—arguendo—that
> Plaintiff should be placed in the TSDB (if applicable); (2)

factual materials considered in connection with any searches and seizures of Plaintiffs' electronic devices or his person by Defendants" or certify that they have none;

c) Regardless of what government programs, policies, lists, or databases Defendants acknowledge, produce (unredacted) all information which has caused Plaintiff to be nominated for, placed on, and/or kept on the TSDB, to further produce (unredacted) the source of the information, and that they further identify the reasons for believing all information provided is accurate;

d) Identify who or what organization, public or private, has conducted Plaintiff's biannual review and any document produced by them regarding Plaintiff's review; [and]

e) Identify who or what private entities have been provided with or had access to any list, database, or other information which identified Plaintiff, or an identifier that could relate back to Plaintiff, as a known or suspected terrorist[.]

(*Id.*, PageID.3210-3211.)

In the alternative, Salloum asks the Court to review the *Ex Parte* Record *in camera* if the Court is not inclined to order production of that record at this point. And he proposes a procedure for that review that would involve the Court questioning a representative of Defendants on his behalf. Specifically, Salloum requests that the Court order Defendants:

[To] provide all of the above-requested items (b through f) to the Court for *in camera* review, and that Defendants present an individual or representative who is most knowledgeable about the produced information that the Judge then examines under oath, with questions of its own and those provided by Plaintiff, acting as a zealous

> advocate for Plaintiff, in conformity with the advice of *Al-Haramain Islamic Found, Inc v Bush*, 507 F3d 1190, 1203 (CA 9, 2007) (the "*In Camera* Request")[.]

(*Id.*, PageID.3211.)

Finally, Salloum argues that Defendants' production of the Public Record to him constitutes an improper "document dump." (*Id.*, PageID.3202.) Salloum therefore seeks an order compelling Defendants to identify which portions of the Public Record are responsive to each of his document requests. (*See id.*, PageID.3210.)

### E

Before Defendants responded to Salloum's motion to compel, they filed a motion to bifurcate briefing on the motion to compel into two stages: (1) a preliminary stage during which Defendants would assert all grounds other than the state-secrets privilege on which they opposed Salloum's motion; and then (2) if necessary, a second stage in which Defendants would assert the state-secrets privilege. (*See* Mot. to Bifurcate, ECF No. 47.) The Court granted that motion on January 24, 2022. (*See* Order, ECF No. 50.)

### F

Defendants did not oppose Salloum's request for an *in camera* review of the *Ex Parte* Record. And to assist in that review, Defendants produced for the Court's *in camera* use, certain materials that offered Defendants' explanation as to why the

documents sought by Salloum were covered by the law enforcement privilege. (*See* Notice, ECF No. 60.)  However, Defendants opposed (1) Salloum's request that the Court order one of their representatives to answer questions under oath during the *in camera* review and (2) the production of the materials sought by Salloum because, according to Defendants, the withheld materials are covered by the law enforcement privilege. (*See* Resp. to Mot. to Compel, ECF No. 53.)

## G

As Salloum requested, the Court reviewed the portions of the *Ex Parte* Record that are (1) responsive to Salloum's requests for production and (2) subject to the claim of law enforcement privilege by the Defendants.  The Court conducted that review *ex parte* and *in camera*.[2]  And the Court completed the review with care and sensitivity to the interests at stake. The Court took heed of the following observations by Ninth Circuit concerning *in camera* and *ex parte* review of sensitive claims of privilege by the Government:

> We take very seriously our obligation to review the documents with a very careful, indeed a skeptical, eye, and not to accept at face value the government's claim or justification of privilege. Simply saying "military secret," "national security" or "terrorist threat" or invoking an ethereal fear that disclosure will threaten our nation is

---

[2] The Court did not include as part of its review an interrogation of a Government witness under oath, as requested by Salloum.  Salloum has not cited any case in which any court followed that procedure, and the Court did not deem that procedure appropriate here.  Instead of using that procedure, as explained above, the Court conducted its own careful review of the relevant documents.

> insufficient to support the privilege. Sufficient detail must be—and has been—provided for us to make a meaningful examination. The process of *in camera* review ineluctably places the court in a role that runs contrary to our fundamental principle of a transparent judicial system. It also places on the court a special burden to assure itself that an appropriate balance is struck between protecting national security matters and preserving an open court system.

!

*Al-Haramain Islamic Foundation, Inc. v. Bush*, 507 F.3d 1190, 1203 (9th Cir.

2007).

## II

### A

Federal Rule of Civil Procedure 26(b)(1) provides for broad discovery into

non-privileged and relevant matters.  It provides as follows:

> Unless otherwise limited by court order, the scope of discovery is as follows: Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

Fed R. Civ. P. 26(b)(1).

Where a party "fails to produce [requested] documents," Rule 37(a)(1) provides that the requesting "party may move for an order compelling disclosure" of those documents. Fed R. Civ. P. 37(a)(1).

## B

The law enforcement privilege is "a common law privilege which has been recognized in both state and federal courts." *Ohio Bureau of Workers' Comp. v. MDL Active Duration Fund, Ltd.*, 2006 WL 3311514, at *3 (S.D. Ohio Nov. 13, 2006) (citing *Friedman v. Bache Halsey Stuart Shields, Inc.*, 738 F.2d 1336, 1341 (D.C. Cir. 1984)). "The purpose of [the law enforcement] privilege is to prevent disclosure of law enforcement techniques and procedures, to preserve the confidentiality of sources, to protect witness and law enforcement personnel, to safeguard the privacy of individuals involved in an investigation, and otherwise to prevent interference with an investigation." *United States v. Taylor*, 2015 WL 9274934, at *2 (M.D. Tenn. Dec. 18, 2015) (alterations in original) (quoting *In re Dep't of Investigation of City of N.Y.*, 856 F.2d 481, 484 (2nd Cir. 1988)). The privilege applies "to disclosure of documents from law enforcement investigatory files" and "to testimony about the information obtained in the files," such as the confidential sources, methods, techniques and procedures of law enforcement. *In re Sealed Case*, 856 F.2d 268, 271 (D.C. Cir. 1988).

10

For the law enforcement privilege to apply, the Government bears the burden of demonstrating that the following three prerequisites are met: "'(1) there must be a formal claim of privilege by the head of the department having control over the requested information; (2) assertion of the privilege must be based on actual personal consideration by that official; and (3) the information for which the privilege is claimed must be specified, with an explanation why it properly falls within the scope of the privilege.'" *Hamama v. Adducci*, 2019 WL 3759423, at *1 (E.D. Mich. Aug. 9, 2019) (quoting *In re Sealed Case*, 856 F.2d at 271).

A determination that the privilege applies "does not complete [a court's] inquiry." *In re The City of New York*, 607 F.3d 923, 945 (2d Cir. 2010). Instead, at that point, "the public interest in nondisclosure must be balanced against the need of a particular litigant for access to the privileged information." *Id*. (quoting *In re Sealed Case*, 856 F.2d at 272). And in conducting that balancing, a court should apply "a pretty strong presumption against lifting the privilege." *Id*. (quoting *Dellwood Farms v. Cargill, Inc.*, 128 F.3d 1122, 1125 (7th Cir. 1997.)) "To rebut that presumption, the party seeking disclosure must show (1) that its suit is 'non-frivolous and brought in good faith,' (2) that 'the information sought is [not] available through other discovery or from other sources,' and (3) that the information sought is 'importan[t]' to the party's case." *Id*. (quoting *Friedman,* 738 F.2d at

1343).    Information is "important to a party's case," when the party has a "compelling need" for it. *Id*.

Finally, even if a party overcomes the presumption, that still "does not end the inquiry." *Id*.   "Rather, once the presumption has been overcome, a court must still balance '[t]he public interest in nondisclosure ... against the need of a particular litigant for access to the privileged information.'" *Id*. (quoting *In re Sealed Case,* 856 F.2d at 272)). Stated another way, "demonstrating a 'compelling need' does not automatically entitle a litigant to privileged information." *Id*.   Instead, "disclosure is required only if that 'compelling need' outweighs the public interest in nondisclosure." *Id*.

## III

## A

As explained above, in the course of deciding Salloum's motion, the Court considered both (1) whether Salloum's requests for production, by their very nature, seek documents and information covered by the law enforcement privilege and (2) whether the documents and information responsive to those requests are, in fact, covered by the privilege.  For the reasons explained below, the Court answers both of those questions in the affirmative.

**1**

The Defendants have persuaded the Court that, by their very nature, each category of documents and/or information sought by Salloum is protected by the law enforcement privilege because the documents in those categories would necessarily reveal sensitive law enforcement techniques, procedures, and confidential sources, and/or would lead to interference with important investigative efforts.

Salloum first requests that Defendants produce (1) "any factual materials Defendants considered in determining – arguendo – that [he] should be placed in the TSDB (if applicable)" and (2) "all information which has caused [Salloum] to be nominated for, placed on, and/or kept on the TSDB [including] the source of the information, and [...] the reasons for believing all information provided is accurate." (Mot., ECF No. 46, PageID.3209-3210 at ¶¶ (b) and (c).)   To the extent this information exists, producing it to Salloum would necessarily reveal confidential techniques, sources, and methods used to determine whether to place an individual in the TSDB.   Indeed, these documents would show how the Terrorist Screening Center decides whether to place suspected terrorists in the TSDB.   And if it were publicly known how individuals are nominated for placement in the TSDB, how individuals are selected for screening, and what information and what sources are used when making those determinations, bad actors would be able to use that information to evade the Government's screening techniques. (*See, e.g.*, Declaration

of Jason Herring, Deputy Director for Operations of the Terrorist Screening Center, at ¶¶ 53-54, 61, ECF No. 37-1, PageID.1213-1214, 1215-1216; Declaration of Samuel Robinson, Supervisory Special Agent with the Federal Bureau of Investigation and Associate Deputy Director for Operations of the Terrorist Screening Center at ¶¶ 4-6, ECF No. 53-1, PageID.3362-3363.)

In addition, as Defendants persuasively argue, Salloum's request for documents related to his purported inclusion in the TSDB is covered by the law enforcement privilege because these documents would reveal whether he is, in fact, in the TSDB, and that status itself is protected by the law enforcement privilege. The privilege applies because revealing an individual's TSDB status poses a substantial risk of interfering with law enforcement investigations. (*See* Herring Decl. at ¶¶ 47, 50-52 ECF No. 37-1, PageID.1210-1213.)  An individual is added to the TSDB only if he is suspected of engaging in, or having a connection to, terrorism, and thus revealing TSDB status would tell a bad actor that he is a suspect and likely under some sort of scrutiny.  That information, in turn, would allow the bad actor to modify his behavior to defeat an investigation and avoid detection. *See e.g., Elhady v. Kable*, 993 F.3d 208, 215 (4th Cir. 2021) ("Disclosure [of TSDB status] would disrupt and potentially destroy counterterrorism investigations because terrorists could alter their behavior, avoid detection, and destroy evidence."); *Kalu v. IRS*, 159 F.Supp.3d 16, 23 (D.D.C. 2016) ("[A]mong other adverse consequences of full or

even partial disclosure [of TSD[B] status] is that '[r]equiring the government to reveal whether a particular person is on the watch lists would enable criminal organizations to circumvent [the TSD[B]'s purpose[.]'"").  Because revealing an individual's TSDB status poses a serious risk of interfering with law enforcement investigations, that information is covered by the law enforcement privilege. For all of these reasons, documents related to Salloum's alleged placement in the TSDB would fall within the scope of the law enforcement privilege.

Second, Salloum requests that Defendants produce "factual materials considered in connection with any searches and seizures of [Salloum's] electronic devices or his person." (Mot., ECF No. 46, PageID.3210 at ¶ (b).) This information is also covered by the law enforcement privilege. Producing this information would publicly reveal the factors, techniques, sources, and methods the Government uses when determining whether to conduct such a search.  And if that information became public, it would "allow those who seek to circumvent the law to assemble a picture of [the Government's] law enforcement focus," to "predict what types of inspections [the Government] will conduct, and "allow those individuals to thwart or evade [] inspections." (Declaration of Diane Sabatino, Deputy Executive Assistant Commissioner, Office of Field Operations, United States Customs and Border Protection, at ¶ 13.b, ECF No. 53-3, PageID.3382-3383.)  "Moreover, disclosure of this information would tend to reveal [the Government's] inspection priorities and

how [the Government] conducts risk assessments in utilizing its finite resources." (*Id.*)  For all of these reasons, the information included in this request is covered by the law enforcement privilege.

Next, Salloum asks Defendants to "identify who or what organization, public or private, has conducted [his] biannual review and [produce] any document produced by them regarding [his] review." (Mot., ECF No. 46, PageID.3210 at ¶(d).) As an initial matter, it is already a matter of public record that the Terrorist Screening Center conducts biannual reviews of individuals in the TSDB (*see* Herring Decl. at ¶ 15, ECF No. 37-1, PageID.1197-1198), and thus Salloum does not need any information concerning who conducts such reviews.  And to the extent that there was a biannual review regarding Salloum's alleged placement in the TSDB, documents produced as a result of that review would be covered by the law enforcement privilege.  Those documents would contain information concerning how the Terrorist Screening Center conducts a biannual review – such as what information it considers and what sources it relies upon.  Producing these documents would therefore reveal confidential law enforcement techniques, sources, and methods.  And releasing these documents publicly would allow potential bad actors to circumvent those techniques and methods and evade detection.  In addition, confirming whether these documents exist would necessarily reveal whether

Salloum has been included in the TSDB, and for all of the reasons explained above, that status is, itself, covered by the law enforcement privilege.

Finally, Salloum requests information regarding "who or what private entities have been provided with or had access to any list, database, or other information which identified" him "as a known or suspected terrorist." (Mot., ECF No. 46, PageID.3210 at ¶ (e).)   But as set forth in the declaration of Brian Griffith, the disclosure of which entities receive information regarding an individual's status as a suspected terrorist would endanger individuals assisting in law enforcement investigations by enabling bad actors "to target personnel at [those] private entities with harassing inquires or phishing [attempts]" to gain unauthorized access to such information. (Griffith Decl. at ¶ 24, ECF No. 53-4, PageID.3404.)   The Court therefore finds that this information also fits within the scope of the law enforcement privilege.

## 2

Salloum offers a number of counterarguments as to why the law enforcement privilege does not apply here.   None persuade the Court that the privilege is inapplicable.

First, Salloum argues that the privilege does not apply because the law enforcement techniques at issue are publicly known.   For this proposition, he relies primarily on a statement from the United States Court of Appeals for the Sixth

Circuit in *ACLU v. NSA*, 493 F.3d 644, 653 (6th Cir. 2007), that it is "undisputed" that the National Security Agency ("NSA") "(1) eavesdrops, (2) without warrants, (3) on international telephone and email communications in which at least one of the parties is reasonably suspected of al Qaeda ties." (Mot., ECF No. 46, PageID.3185-3186.)   However, Salloum is not challenging the NSA's warrantless wiretapping program.   Nor is Salloum is seeking information limited solely to warrantless wiretaps.  He is seeking his TSDB status and all information relating to that status. What *ACLU* suggested was public knowledge is not coextensive, or even necessarily related, to what Salloum seeks to compel.

More importantly, *ACLU* does not stand for the proposition that a plaintiff may defeat a claim of law enforcement privilege simply by pointing out that the technique used by law enforcement was generally known to the public. In fact, *ACLU* held that even though the public was generally aware that the NSA engaged in wiretapping, the state secrets privilege nonetheless barred production of any evidence that the NSA "intercepted" "any of [plaintiffs'] own communications." *ACLU*, 493 F.3d at 653.  This holding acknowledges that there is a distinction between, on the one hand, the existence and use of an investigative tool, and, on the other hand, how the Government implements and uses that tool in particular circumstances.  That the former is publicly known does not mean the latter is as well.

This distinction is fatal to Salloum's argument that the law enforcement privilege does not apply here because the public is generally aware of the techniques that the Defendants may have employed against him. That Defendants investigate suspected terrorism, and that they may use or rely on the use of certain investigative tools, may well be public knowledge.  But that does not establish that the public has any knowledge regarding (1) how and when they decide to use those tools, (2) the information underlying those decisions, (3) against whom they target with those tools, and (4) how they have done so in particular circumstances.  Salloum has not demonstrated that that information is public knowledge; and Defendants have made a convincing showing that the information is not in fact public and that their non-public nature is critical to their efficacy.

Second (and similarly), Salloum argues that the law enforcement privilege does not apply because the "SSSS" designation (that seems to have been assigned to him) combined with his treatment at airports has already disclosed that he is in the TSDB.  This argument also falls short.  Defendants have provided a declaration indicating that the "SSSS" designation identified by Salloum is given both to TSDB-listed individuals and randomly selected travelers alike. (*See* Turner Decl. at ¶¶ 10–11, ECF No. 37-2, PageID.1222.).  Thus, even if Salloum has been designated with an "SSSS" classification, that would not necessarily mean he is in the TSDB.  And while "common sense suggests that travelers included in the TSDB are more likely

19

to be chosen" for additional screening at airports, *Elhady*, 993 F.3d at 215, and therefore Salloum's treatment could reasonably be taken to suggest that he may be in the TSDB, the Government maintains a policy to not confirm or deny TSDB status. (*See* Herring Decl. at ¶ 46, ECF No. 37-1, PageID.1210.)  And, as discussed above, there is good reason to believe that this policy protects the interests of law enforcement investigations.  The Court is therefore not persuaded that Salloum's TSDB status is public solely on the basis of how he is treated at airports.

Finally, Salloum argues that the law enforcement privilege does not apply to the materials he seeks because he is not the subject of any ongoing investigations. He insists that "any potential investigation into [him] has not moved for years." (Reply, ECF No. 58, PageID.3440.)  But Salloum has no evidence supporting his contention that he is not the subject of an open and ongoing investigation.[3]  He therefore may not defeat application of the privilege on this basis.

### 3

For all of the reasons explained above, the Court concludes that the law enforcement privilege applies to the categories of information and documents sought by Salloum.   Nonetheless, as explained above, the Court conducted a careful *in camera* review of the documents that are actually responsive to Salloum's requests

---

[3] The Court in no way means to suggest that there is, or is not, an active investigation into Salloum.  The Court decides only that Salloum has not presented evidence supporting his contention that any investigation of him is inactive.

in order to determine whether those documents are, in fact, covered by the privilege. That review confirmed that the portions of the *Ex Parte* Record that are responsive to Salloum's requests for production are covered by the law enforcement privilege. The Defendants have provided detailed declarations explaining the nature of the documents and why such documents fall within the law enforcement privilege – in the declarations that are part of the Public Record and the *Ex Parte* Record – and the Defendants' showing has persuaded the Court that the responsive documents are actually covered by the law enforcement privilege.

## B

The next step in the law enforcement privilege analysis is normally a determination as to whether the party seeking disclosure of the privileged information – here, Salloum – has overcome the strong presumption against disclosure. *See In re Sealed Case*, 856 F.2d at 271. However, the Court need not undertake that analysis here because even if Salloum could overcome the presumption, disclosure would still be inappropriate on the ground that "the public interest in nondisclosure" outweighs "the need of [Salloum] for access to the privileged information[.]" *In re City of N.Y.*, 607 F.3d at 948.

The Court recognizes that Salloum has a significant need for the information he seeks. Salloum has brought this action in good faith and has raised constitutional claims that the Court found plausible. Moreover, without access to the requested

information, Salloum's ability to challenge his placement in the TSDB in this action is substantially curtailed.

Nonetheless, the Court is satisfied that, for the reasons outlined at length in the Defendants' submissions (including in materials submitted *ex parte* that the Court may not discuss in this publicly-available order), the Defendants' interests in non-disclosure outweigh Salloum's interests in disclosure. The Defendants have identified a number of very important law enforcement and national security interests that would be undermined by disclosure. For instance, disclosure of the information sought by Salloum would expose key operational details concerning the operation of the TSDB and would thereby hinder the effectiveness of this important law enforcement tool. Simply put, if bad actors learn how the TSDB works, they will have an easier time defeating the system. The Defendants even have a strong interest in avoiding a narrow disclosure limited to whether Salloum, himself, is in the TSDB because, as explained above, even that circumscribed disclosure would give bad actors valuable clues about how to defeat the TSDB. *See e.g., Elhady*, 993 F.3d at 215; *Kalu*, 159 F.Supp.3d at 23. The Defendants' strong interests like these warrant denial of Salloum's requests for production. *See In Re Terrorist Attacks on September 11, 2001*, 523 F.Supp.3d 478, 504 (S.D.N.Y 2021) (holding that even if party seeking disclosure of information had a compelling need for disclosure of information protected by the law enforcement privilege, disclosure would not be

appropriate because the Government's interest in non-disclosure of information outweighed interest in disclosure).

Finally, for the reasons explained by Defendants, the Court further concludes that Defendants' interests in non-disclosure are so strong that even review by Salloum's counsel under an "attorney's eyes only" order would be inappropriate. (*See* Resp. to Mot. to Compel, ECF No. 53, PageID.3348-3350.)

## IV

The Court will also deny Salloum's request for relief from what he calls a "document dump" by Defendants.  The Court is not persuaded that such a dump occurred or that the manner in which Defendants produced materials in the Public Record has inhibited Salloum from conducting a meaningful review.

## V

For the reasons explained above, the Court **GRANTS IN PART AND DENIES IN PART** Salloum's motion to compel discovery (ECF No. 46).

The Court **GRANTS** the motion to the extent that it asks the Court to review the *Ex Parte* Record and redactions from the Public Record on an *in camera* basis.

The Court **DENIES** the motion in all other respects.

**IT IS SO ORDERED.**

s/Matthew F. Leitman
MATTHEW F. LEITMAN
Dated:  September 29, 2022          UNITED STATES DISTRICT JUDGE

I hereby certify that a copy of the foregoing document was served upon the parties and/or counsel of record on September 29, 2022, by electronic means and/or ordinary mail.

s/ Susan Pinkowski
Case Manager
(313) 234-2662